THE PANTASOTE COMPANY, PLAINTIFF-APPELLANT, v. CITY
OF PASSAIC, DEFENDANT-RESPONDENT.

Argued March 4, 1985—Decided July 30, 1985.

*Carl G. Weisenfeld* argued the cause for appellant (*Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney,* attorneys; *Carl G. Weisenfeld, Todd M. Sahner* and *Paul H. Brownstein,* on the brief).

*John J. McKniff,* City Attorney, argued the cause for respondent.

The opinion of the Court was delivered by

HANDLER, J.

In this case, the taxpayer, the Pantasote Company, appealed the 1979 tax assessment of its property in the City of Passaic, New Jersey, to the Passaic County Board of Taxation, which affirmed the assessment. Pantasote appealed the judgment to the Tax Court, and later filed additional appeals pursuant to *N.J.S.A.* 54:3–21 covering the 1980 and 1981 assessments. For each of the three years, Pantasote raised the issues of valuation and discrimination. The court affirmed the original assessments, ruling that Pantasote failed to show that the assessment of the property was incorrect. 6 *N.J.Tax* 34 (Tax Ct.1983). Pantasote appealed to the Appellate Division, which affirmed the judgment substantially for the reasons given by the Tax Court. We granted Pantasote's petition for certification, limiting the appeal to the issue of the Tax Court's use of a presumption in favor of the original tax assessments. 99 *N.J.* 143 (1984).

Pantasote owns approximately 5.725 acres of industrial property located at 2–52 Jefferson Street in the City of Passaic. The site consists of a complex of connected buildings constructed of steel, concrete and brick devoted to the manufacture of a chemical product. 6 *N.J.Tax* at 37. Most of the construction occurred between 1884 and 1916, although a number of improvements, including a two-story office building, have been added since 1951.

The values assessed by Passaic are as follows:

| | 1979 | 1980 | 1981 |
|--------------|-------------|-------------|-------------|
| Land | $ 149,400 | $ 149,400 | $ 149,400 |
| Improvements | $1,468,500 | $1,480,500 | $1,529,300 |
| TOTAL | $1,617,900 | $1,629,900 | $1,678,700 |

The County Board affirmed the 1979 valuation of $1,617,900.

Before the Tax Court, taxpayer's expert, Carl Krell, relied primarily on the capitalization of income approach in an attempt to establish a lower true value. He utilized nine assertedly comparable leases of industrial property in arriving at an economic rent for the property. Taxpayer's expert also employed the market approach to value, introducing statistics relating to the sale of one nearby industrial complex. Krell rejected the use of a cost approach because he found it difficult to depreciate the older property and he did not believe the property should be characterized as special purpose or unique structure, for which the cost approach is the usual valuation method. He also classified the reactors and silos, which were installed specifically for the conversion of the complex to chemical manufacturing, as personal property, thus excluding them from the real property value.

The city's expert and chief assessor, Albert Galik, arrived at his 1979 assessment by adjusting the assessment of the previous year. The 1978 assessment apparently reflected a recently concluded seven-year long litigation between the parties, which

had finally been settled after three opinions by the Division of Tax Appeals [1] and two remands by the Appellate Division. Galik arrived at the 1979 assessment by adding value to the 1978 assessment reached by settlement. In 1980 and 1981, he also added a ten percent time-adjustment to reflect the general increase in industrial values, basing this on sales in the area.

The Tax Court found that the property was adapted for a special purpose and thus rejected the income approach offered by the taxpayer. The court also determined that, among other things, the taxpayer's expert had incorrectly failed to include the silos in the assessment, had erroneously treated the office building as industrial property, and had relied on insufficient data. It held that the taxpayer failed to present competent evidence from which true value could be established. Taxpayer's proofs therefore failed to rebut the presumption of validity that attended the original assessment. As noted, the Appellate Division affirmed.

## I.

Certain principles governing real property taxation practices and administrative and judicial review of property tax assessments have become almost axiomatic. *N.J.S.A.* 54:4-23 provides for the determination of taxable value of real property. This provision requires that all real property be assessed at true value, which is defined as the value the property would bring at a fair, bona fide, and uncoerced private sale. *See Newark v. West Milford Tp., Passaic County*, 9 *N.J.* 295, 303 (1952).

On appeal a municipality's original tax assessment is entitled to a presumption of validity. *Riverview Gardens v. North Arlington Borough*, 9 *N.J.* 167, 175 (1952); *see Rodwood*

---

[1] The Division of Tax Appeals is the predecessor to the Tax Court of New Jersey. The court has the same jurisdiction and scope of review as the former Division once had. *N.J.S.A.* 2A:3A-3.

*Gardens, Inc. v. Summit,* 188 *N.J.Super.* 34, 38 (App.Div. 1982). The presumption attaches to the *quantum* of the tax assessment. *Riverview Gardens, supra,* 9 *N.J.* at 174. Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous. *Id.* The presumption in favor of the taxing authority can be rebutted only by cogent evidence, *Riverview Gardens,* 9 *N.J.* at 175, a proposition that has been long settled, *e.g., Central R.R. Co. of N.J. v. State Tax Dept.,* 112 *N.J.L.* 5, 8 (E. & A.1933); *Estell v. Hawkens,* 50 *N.J.L.* 122 (Sup.Ct.1887). The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be "definite, positive and certain in quality and quantity to overcome the presumption." *Aetna Life Ins. Co. v. Newark,* 10 *N.J.* 99, 105 (1952).

 The Court in *Aetna Life Ins. Co.* explained the presumption in favor of an assessment and set forth the standard for the review of tax assessments.

> The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise. *L. Bamberger & Co. v. Division of Tax Appeals,* [1 *N.J.* 151 (1948)]. And the taxpayer has not met this burden unless he has presented the appellate tribunal with sufficient competent evidence to overcome the presumption, that is, to establish a true valuation of the property at variance with the assessment. *Riverview Gardens v. North Arlington Borough,* 9 *N.J.* 167, 175 (1952). In other words, it is not sufficient for the taxpayer merely to introduce evidence: the presumption stands until sufficient competent evidence is adduced to prove a true valuation different from the assessment. Such evidence must be definite, positive and certain in quality and quantity to overcome the presumption. *Central R.R. Co. of N.J. v. State Tax Dept.,* 112 *N.J.L.* 5, 8 (E. & A.1933). [10 *N.J.* at 105].

It is clear that the presumption is not simply an evidentiary presumption serving only as a mechanism to allocate the burden of proof. It is, rather, a construct that expresses the view that in tax matters it is to be presumed that governmental authority has been exercised correctly and in accordance with law. *Powder Mill, I Assocs. v. Hamilton Tp.,* 3 *N.J.Tax* 439 (Tax Ct.1981).

As noted, the only issue before us on this appeal is whether the Tax Court properly applied the presumption of validity as to the original tax assessment. The Tax Court reviewed the evidence of the taxpayer to determine its weight and sufficiency. It rejected the income approach and market approach used by the taxpayer's expert. Based on this analysis, the court held that Pantasote had failed to carry its burden in rebutting the presumption.

■ We do not question the rejection by the Tax Court of the sufficiency of the taxpayer's proofs. It is recognized that there is no single rule or approach that must be followed in valuing real property. *Glen Wall Assocs. v. Wall Tp.*, 99 *N.J.* 265 (1985); *Samuel Hird & Sons, Inc. v. Garfield*, 87 *N.J.Super.* 65, 72 (App.Div.1965). The statute does not require or exclude any particular method of assessing true value. *Riverview Gardens, supra*, 9 *N.J.* at 175. "The answer [to the valuation of property] depends upon the particular facts and the reaction to them of experts steeped in the history and hopes of the area." *New Brunswick v. Tax Appeals Div.*, 39 *N.J.* 537, 544 (1963).

The only issue to be considered is whether, having reasonably rejected the adequacy of the taxpayer's evidence, the Tax Court was, under the circumstances, permitted to acknowledge and apply the presumption of validity as to the *quantum* of the original tax assessment, even though it found the method used by the municipality's assessor erroneous because it was based in part on the assessment of prior years. 6 *Tax Ct.* at 42.

■ We agree with the Tax Court that the assessment methodology used by the municipal tax assessor was incorrect. *See Newark v. West Milford Tp.*, 9 *N.J.* 295 (1952); *In re Kresge-Newark, Inc.*, 30 *N.J.Super.* 489 (App.Div.1954). Consequently, the evidence of the municipality would itself have been insufficient as an independent basis for determining the true value of the property. However, absent any strong indication arising from the evidence properly before the Tax Court that

the *quantum* of the assessment was far wide of the mark of true value, inadequacies in the municipality's evidence or deficiencies in the assessment methodology will not impugn the presumption of validity that attaches to the original assessment. *See Schmertz v. Dover Tp.,* 4 *N.J.Tax* 145 (Tax Ct.1982).

The question then is whether the *quantum* of the assessment made by the municipal tax assessor under all of the attendant circumstances is so far removed from the putative true value of the property that it deservedly loses its protective presumption of validity. If not, then we must consider whether the asserted deficiencies in the municipality's evidence are themselves so palpably egregious or the method of assessment itself is so patently defective and aberrant as to justify removal of the presumption of validity.

In this case, these considerations do not require an abandonment of the presumption of validity. The *quantum* of the assessment appears to be a reasonable approximation of fair value. Moreover, while the assessment methodology was incorrect, these deficiencies do not manifest an arbitrary or capricious discharge of the assessor's responsibilities. Consequently, in our opinion, the presumption of validity that attaches to the *quantum* of the assessment was properly invoked.

The factors that strongly indicate the reasonableness of the *quantum* of the assessment as being reasonably reflective of true value can be gleaned from the history of this tax litigation. The record discloses that in several tax appeals involving the 1971–78 assessments for the property, both Pantasote and Passaic asserted valuations that were different from the underlying tax assessment. The Division of Tax Appeals ultimately determined valuations for the years 1976–1978. Its assessment for 1978, predicated on the cost approach, was $1,310,000; this was based on the true value of $1,738,700 before the application of the tax ratio. In this posture, that determination reflects a considered judgment in the context of a contested adjudication.

After the Division of Tax Appeals determined true value, the Appellate Division reversed and remanded the judgment. The Appellate Division, however, did not object to the Division's independent assessment, but rather to the failure of the Division to set forth the "method and manner of his calculations and the bases of his findings." The next judgment was also remanded for the same reason. Thereafter, the parties settled on true value prior to the conclusion of the second remand.

In this case, the municipal tax assessor testified that even though he relied on the true value assessment that emerged from the settlement of the prolonged tax litigation, he originally valued the property in excess of $2,200,000, using the cost approach in the prior litigation. Based on this evaluation, his original estimated true values for the years in question were actually higher than the values under scrutiny in this appeal. Although the evidence is not as clear or complete as desirable, it seems that the valuation responsible for this litigation might be less than actual true value under the cost approach. While this history does not in any sense validate the assessment approach followed by the tax assessor in this case, it does serve to dispel the conclusion that the assessment result actually reached by the assessor was arbitrary or unjust. *Accord Gottdiener v. Roxbury Tp.*, 2 *N.J.Tax* 206, 213 (Tax Ct.1981) ("furthermore where the factual situation and questions presented are the same, prior adjudication of a similar nature may be controlling."); *Hackensack Water Co. v. Borough of Old Tappan*, 77 *N.J.* 208 (1978) (Handler, J., dissenting).

■ We recognize that on *de novo* review, the Tax Court may determine a true value different from the original assessment, the County Board's assessment, or the taxpayer's valuation. *Riverview Gardens, supra*, 9 *N.J.* at 175; *Passaic v. Gera Mills*, 55 *N.J.Super.* 73, 84 (App.Div.1959); *Pennwalt Corp. v. Holmdel Tp.*, 4 *N.J.Tax* 51 (Tax Ct.1982); *see Hackensack v. Rubenstein*, 37 *N.J.* 39 (1962); *Rek Investment Co. v.*

*Newark*, 80 *N.J.Super.* 552 (App.Div.1963); *see generally N.J. S.A.* 2A:3A–4. This does not mean that the court must make an independent finding of value based only upon evidence that is brought before it without regard to the presumptive validity of the assessment. *See Glenwood Realty Co. v. East Orange*, 78 *N.J.Super.* 67, 73 (App.Div.1963). Rather, the Tax Court must give weight to the presumption of validity that attaches to the original assessment. Only if it finds that the presumption has been overcome by cogent evidence, or there are sufficient collateral grounds, such as an assessment totally unrelated to true value or one derived from a patently arbitrary and capricious assessment methodology, does it become necessary for the court independently to determine true value, and, in that event, to support its own decision in departing from the presumptively valid assessment. It is to be understood, of course, that the Tax Court will exercise its jurisdiction selectively and critically. The Tax Court would also be further constrained in a case in which the taxing district has not filed its own appeal or claim for affirmative relief. See *F.M.C. Stores v. Borough of Morris Plains*, 100 *N.J.* 418 (1985), decided today.

In this case, the Tax Court perceived no sound basis for departing from the presumptively correct original assessment and making an independent determination of true value. We find no abuse of discretion. While the assessment methodology of the tax assessor was incorrect, it was not arbitrary or capricious. Moreover, the amount of the assessment was reasonably related to property values that could have otherwise been reached by an application of sound assessment approaches, and, further, the assessment appears to be a reasonable approximation of true value. The Tax Court, under these circumstances, properly applied the presumption of validity to the assessment, and soundly concluded that the taxpayer had failed to overcome that presumption by sufficient evidence.

We affirm the judgment of the Appellate Division.