KAHN, J.T.C.
This is the court’s determination with respect to a local property tax appeal involving assessments for 1998 and 1999. The property is known as Block 259, Lot 1, located on River Road, Hoboken, New Jersey. The relevant assessment under review for both years is as follows:
Land $1,431,000.00
Improvements $ 569,000.00
Total $2,000,000.00
*208 The parties do not differ as to the essential description and character of the subject property located in Hoboken, Hudson County along the westerly bank of the Hudson River, at the foot of River Road. The site contains a total area of 8.248 acres of which 4.908 acres are submerged and 3.340 acres are above the river and considered upland.
Improvements on the site consist of three finger piers extending eastward into the Hudson River grounded upon the aforementioned submerged land. These piers total 13,122 square feet, 11,680 square feet and 8,250 square feet, respectively. The upland portion consists, first, of five separate buildings, ranging in size between 750 square feet and 4,000 square feet, performing various functions in the operation of the marine repair facility. Along the entire 553 foot length of the subject property bordering the Hudson River there is a quay totaling 10,660 square feet in area. Additional improvements on the upland portion include a paved parking lot and fencing.
At all times relevant, the property has been utilized as a marine repair facility for the purpose of repairing tug boats and barges. Periodic dredging is required between the piers to maintain sufficient water depth for efficient operation of the drydock equipment. The property is zoned industrial. As both appraisal expert witnesses acknowledged, under the zoning ordinance operation of a marine repair facility is a conditional use, and therefore, a legal non-conforming use. The subject does have certain height restrictions. Approximately 95% of the subject property has a height limitation for buildings at thirty-five feet. This area is located directly in front of and fifty feet below the Stevens Institute of Technology. Approximately 5% of the subject property, at the very northerly boundary, has a height restriction for buildings at eighteen feet. This sliver of the subject property is located directly in front of Elysian Park, approximately twenty feet below same. Both expert witnesses acknowledged that the subject property is ultimately to be converted from industrial use to multifamily use similar to other waterfront property in Hoboken. Since this zoning change has not yet occurred, both appraisal *209 experts agree that, as of the relevant assessment dates, the highest and best use of the subject is as a marine repair facility as currently utilized.
Taxpayer’s appraisal expert witness utilized both the cost and the income capitalization approach as to valuation. By means of the cost approach, this witness concluded value at $1,678,000.00 for both years in issue. By the income capitalization approach, the ■witness’s estimate of value was $1,408,000.00. Taxpayer’s appraisal expert witness indicated heavier reliance on the income capitalization approach. The municipality’s appraisal expert, utilizing only the cost approach, estimated value for the subject in the amount of $3,080,300.00 for 1998 and $4,273,600.00 for 1999.
It is this court’s conclusion that neither party has established sufficient reliable evidence to rebut the presumption of the validity of the appealed assessment. Said presumption has been defined by the Supreme Court of New Jersey in Pantasote Co. v. City of Passaic, 100 N.J. 408, 495 A.2d 1308 (1985) as follows:
“The strength of the presumption is exemplified by the nature of the evidence that is required to overcome it. That evidence must be definite, positive and certain in quality and quantity to overcome the presumption.” Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952). Id. at 413, 89 A.2d 385.
In MSGW Real Estate Fund v. Mountain Lakes Bor., 18 N.J. Tax 364 (1998), the Tax Court discussed the applicability of the presumption of the validity of the assessment appealed from stating:
In the absence of a R 4:37-2(b) motion which is denied, the presumption of validity remains in the case through the close of all proofs. See Rodwood Gardens, Inc v. City of Summit, 188 N.J.Super. 34, 455 A.2d 1136 (App.Div.1982), which states, in the context of an appeal from a judgment rendered at the conclusion of a full trial, that “only when the presumption is overcome does it become incumbent upon the Tax Couit to appraise the testimony, make a determination of true value, and fix the assessment.” . . Consequently, if the defendant does not move to dismiss at the conclusion of the plaintiffs proofs pursuant to R. 4:37-2(b), then, at the conclusion of the trial, the court, before proceeding to decide the appeal based on weighing and analysis of the evidence, must first determine whether the presumption of validity has been overcome. In making this determination, the court should view the evidence as if a motion for judgment at the close of all the evidence had *210 been made pursuant to R. 4:40-1 (whether or not the defendant or plaintiff actually so moves), employing the evidentiary standard applicable to such a motion.
[Id. at 377 (some citations omitted).]
Neither party in this case moved pursuant to R. 4:37-2(b) or R. 4:40-1 to terminate the litigation. Therefore, pursuant to MSGW Real Estate Fund, supra, 18 N.J. Tax at 377, it is this court's obligation to decide if the presumption of correctness was overcome. In doing so the evidence will be viewed as if a R. 4:40-1 motion for judgment had been made at the conclusion of the trial.
Taxpayer’s appraisal expert’s income capitalization analysis is fatally flawed by an unreliable attempt to calculate potential gross income. The so-called comparable properties were malinas that rent dock space to customers to store them boats. The witness calculated the potential area for such use in terms of lineal feet, measuring the subject piers and quay, which endeavor resulted in a dollar amount per lineal foot. This witness, however, testified that a marina was clearly not the highest and best use of the subject. Taxpayer’s expert witness indicated that the current use of the subject as a marine repair facility provided a significantly higher value to its property than would use as a marina. Both expert witnesses, in fact, indicated that the subject property would be most valuable as a single-user marine repair facility and not one to be leased by the owner to another party.
The use of marina rentals as comparables provides a totally unreliable comparison, since this court has no reasonable basis to calculate potential gross income. Therefore, this court need not analyze the balance of his income capitalization methodology.
Taxpayer’s appraisal expert’s cost approach fails for essentially the same reason. The cost approach requires the establishment of a reliable land value by the use of comparable sales. First, taxpayer’s appraisal expert acknowledged that he could find no sales of land bordering the Hudson River in Hoboken diming the relevant time period. The witness indicated, however, that such sales may have existed in New York, for example, but he did not investigate same. This witness’s four purported comparable sáles involved industrially-zoned properties most suitable for warehousing or manufacturing. Unlike the subject property, these proper *211 ties are not situated on or near water; therefore, these comparables could not be utilized as a marine repair facility. Although taxpayer’s appraisal expert described his comparables as being located in a former waterfront zone, none has direct access to the Hudson River or any other waterway. Taxpayer’s witness acknowledged that his comparable properties could not be utilized in the same manner as the subject. The fact that one of his comparable properties contained submerged land does not provide a basis for comparison with the subject. In Ford Motor Co. v. Township of Edison, 127 N.J. 290, 604 A.2d 580 (1992), the Supreme Court discussed comparability factors as follows:
In State v. Azzolina Land Corp., 101 N.J.Super. 103, 243 A.2d 276 (1968), Judge Conford, writing for the Appellate Division, emphasized that “(elvidence of sales cited by an expert selves the function both of independent evidence for the fact-finder and support for the expert’s opinion value. The latter factor should generally exert a liberal influence on admissibility.” Id. at 108, 243 A 2d 276, (citing Delaware, L. & W.R.R. v. City of Hoboken, 10 N.J. 418, 434, 91 A.2d 739 (1952)). Generally speaking, comparable sales include all sales that will lend logical, coherent, support if they show “comparable building density ratios, functional similarities, proximity of sale dates to assessing dates, similarity of age, construction and condition, and in some cases, size.” Shulton, Inc. v. City of Clifton, 7 N.J. Tax 208, 218 (1983), aff'd. 7 N.J. Tax 220 (App.Div.1984).
[Id. at 308, 604 A.2d 580.]
Utilizing the definition of comparability as described by the Supreme Court, the purported comparables used by taxpayer’s appraisal witness are only similar in that they are zoned industrially and are located in the same county as the subject property. One or two of the comparables are located within the confines of Hoboken. This is where comparability ends. None of the parcels is located on or proximate to water. None can be utilized for a marine repair facility, the acknowledged highest and best use of the subject. The subject consists of more than 50% submerged land. The highest and best uses of the comparables involve industrial facilities without the height restriction that exists on the subject. The subject property, according to taxpayer’s appraisal expert, is not suitable for larger industrial development. With respect to the comparable properties utilized by taxpayer for a) comparable rents utilized in the income capitalization approach and b) the comparable land sales utilized in the cost analysis, no useful comparison can be made with the subject.
*212 The highest and best use determination is significant whenever a comparable sales approach to valuation is utilized.
The second reason to estimate the highest and best use of property as improved is to help identify comparable properties. The highest and best use of land as though vacant and property as improved should be the same or similar for each comparable property as for the subject property. For example, it may be inappropriate to use a comparable property that has a highest and best use as offices in appraising a subject property that has a highest and best use as a hotel.
[Appraisal Institute, The Appraisal of Real Estate 280 (10th ed.1992).]
The aforementioned attempted comparable sales analysis by taxpayer’s appraisal expert provides no reasonably reliable evidence of value for the subject land. There being no means for this court to reasonably estimate the value of the subject land, review of taxpayer’s appraisal expert’s cost analysis for the subject improvements is unnecessary.
The municipality attempted to estimate the value of the subject property by the cost approach in seeking an increased assessment. Its appraisal expert also attempted to formulate a value for the land by means of a comparable sales study. He too selected comparables located in Hoboken and elsewhere in Hudson County. These comparables (like taxpayer’s) were inland and not situated along any waterway. Several of these parcels also were found to be improved. The municipality’s appraisal expert witness acknowledged that none of these comparables could be utilized as a marine repair facility and could only be used for various industrial buildings. In short, this Witness’s comparables exhibited the same flaws as existed with respect to the comparables utilized by taxpayer’s appraisal expert. This court finds that there is no reliable information supplied by the municipality’s appraisal expert from which this court could reasonably estimate the value of the subject land. Without a reliable estimate of land value, it is unnecessary for this court to analyze this witness’s cost analysis of the improvements.
The municipality’s appraisal expert testified that he was aware of a sale of a marine repair facility in Perth Amboy. He testified, however, that said sale would not be applicable as a comparable to the subject property. This witness, however, did not indicate any familiarity with the Perth Amboy property or with the terms and *213 conditions of that sale. In short, he presented no information to support his determination that the Perth Amboy property was not comparable to the subject. The Tax Court in Sunshine Biscuits, Inc. v. Sayreville, 4 N.J. Tax 486 (1982), dealt with the question of utilizing comparable properties not located proximate to the subject.
Defendant further contends that the market, data approach as applied by plaintiffs appraiser is fundamentally flawed because it is based on sales of industrial plants outside of Sayreville and outside of Middlesex County. While it is generally true that sales of comparable facilities should not be too remote in location from the subject property, the process of comparison must be based on sales that reflect typical market action within the market in which the property would be sold. American Institute of Real Estate Appraisers, The Appraisal of Real Estate 274-275 (7th ed.1978). The market for a particular parcel of real estate consists of the potential purchasers, unlimited by a specific geographical location. Ibid The effectiveness of comparable sales which are some distance from the subject depends, in large part, upon the nature and character of the property involved. The record clearly reveals, in this matter, that the market for the subject would be, at a minimum, from northern New Jersey to metropolitan Philadelphia, Pennsylvania. Defendant’s appraiser conceded that the market would probably encompass an even greater geographical area. The evidence is sufficient to support a finding, and I so find, that there is a broad regional market for industrial plants such as the subject. The ultimate purpose of valuation is to arrive at a fair and realistic value of the properly involved. This requires a view of the action and reaction of the potential buyers and sellers. If the potential buyers would not be limited to a narrowly confined area, I see no reason why this court should put on blinders and ignore economic realty.
[Id. at 496 (footnote omitted).]
Both appraisal experts’ acknowledged that marine repair facilities are not common. Both acknowledge the need for same to be located alongside water. Both, however, confined their search to Hoboken and adjacent municipalities. Recognizing the potential paucity of time comparables, the appraisal experts should have searched beyond the borders of the subject municipalities, county and state. Failure to do so results in the appraisal experts utilizing properties not at all comparable to the subject. In Pennwalt Corp. v. Holmdel Tp., 4 N.J. Tax 51 (1982), Judge Rimm found the municipality’s appraisal expert to not be credible, indicating that the witness did not utilize proper appraisal methodology. Id. at 61. Judge Rimm further indicated that the expert’s testimony was useless in attempting to arrive at the value of the property in that case.
*214 The judiciary and fact-finding bodies are not bound by the opinions of expert witnesses. Wright v. Purepac Corp., 82 N.J.Super. 100, 111, 196 A.2d 695 (1963). The weight to be given to an expert’s opinion depends especially upon the facts and reasoning which are offered as the foundation of his opinion. Ocean County v. Landolfo, 132 N.J.Super. 523, 528, 334 A.2d 360 (1975). The weight and value of expert testimony are for the trier of facts. Robbins v. Thies, 117 N.J.L. 389, 398, 189 A. 67 (1937). An expert’s opinion may be adopted in whole or in part or completely rejected.
[Id. at 61 (quoting Atlantic City v. Atlantic City Bd. of Taxation, 2 N.J. Tax 30, 42-43 (1980).]
For the reasons set forth above, the municipality’s appraisal expert has also failed to rebut the presumption of correctness of the appealed assessment. In Ford Motor Co., supra, 127 N.J. 290, 604 A.2d 580, the Supreme Court stated as follows:
County Tax Board judgments do carry a presumption of correctness. To demand “definite positive and certain evidence in quality and quantity to overcome the presumption” is for the Tax Court. Pantasote, supra, 100 N.J. at 413, 495 A.2d 1308, (quoting Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952)). One court has held, however, that “[t]he so-called ‘presumption’ ha[s] no artificial probative force once substantial evidence to the contrary [has been] adduced,” Samuel Hird & Sons, Inc. v. City of Garfield, supra, 87 N.J.Super. at 74, 208 A.2d 153, and “[o]nce the ‘presumption’ is met it was the duty of the Division [predecessor to the Tax Court] to appraise the testimony and make findings of fact.” Van Realty, Inc. v. City of Passaic, 117 N.J.Super. 425, 430, 285 A.2d 52 (App.Div.1971) (citing Samuel Hird & Sons, Inc. v. City of Garfield, supra, 87 N.J.Super. at 75, 208 A.2d 153).
(O)nce sufficient competent evidence is produced and the presumption overcome, the matter is not thereby concluded in favor of the complaining party. The court must then turn to a consideration of the evidence adduced on behalf of both parties and conclude the matter based on a fair preponderance of the evidence. When the court rejects the ultimate conclusions as to the true value proffered the parlies’ experts, it should make an independent determination of true value. On the basis of those portions of the expert’s testimony which the court finds credible. [Pennwalt Corp. v. Township of Holmdel, 4 N.J. Tax 51, 55-56 (1982) citing Samuel Hird & Sons, supra, 87 N.J.Super. 65, 208 A.2d 153 (1965); Almax Builders, Inc. v. City of Perth Amboy, supra. 1 N.J. Tax 31; City of Newark v. 1013 Corp., 1 N.J. Tax 107 (1980)).]
[Id. at 312-13, 604 A.2d 580.]
Pursuant to the analysis by the Tax Court in MSGW Real Estate Fund, supra, 18 N.J. Tax at 377, this court must determine whether or not taxpayer or counterclaimant municipality has rebutted the presumption of the validity of the assessment. This court finds that the parties have not. Specifically, taxpayer’s appraisal expert presented no reliable estimate of potential gross income in the income capitalization approach and no reliable *215 estimate of land value in the cost approach. Without same there is insufficient evidence to support any value estimate submitted by taxpayer. The evidence presented by defendant, discussed above, was also insufficient for this court to make a reliable calculation of value. As a result, the presumption of correctness of the assessment appealed from has not been overcome by either party.
Since this court has determined that both parties have failed to rebut the presumption of the validity of the assessment, both taxpayer’s complaints and the municipality’s counterclaims must be and are hereby dismissed. This court finds that the assessment for both years must, therefore, be affirmed.
The Tax Court Administrator is therefore ordered to enter judgment affirming the assessment for 1998 and 1999 as follows:
Land $1,431,000.00
Improvements $ 569,000.00
Total $2,000,000.00