NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
 P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 815-2922
TeleFax:   (609) 376-3018
taxcourttrenton2@judiciary.state.nj.us

December 13, 2017

Robert A. Fee, Esq.
East Gate Center
309 Fellowship Road, Suite 200
Mount Laurel, New Jersey 08054

Heather Lynn Anderson
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 106
Trenton, New Jersey 08625-0106

Re: Saulwil, Inc. v. Director, Div. of Taxation
   Docket No. 014062-2013
   Samuel and Louise Hammer v. Director, Div. of Taxation
   Docket No. 014061-2013

Dear Counsel:

This letter opinion constitutes the court's decision of motion by defendant ("Taxation"), made at the end of plaintiffs' proofs under R. 4:37-2(b). Taxation sought dismissal of the above-captioned complaints on grounds plaintiffs' failed to meet their burden of proof and failed to overcome the presumptive correctness of Taxation's final determinations, which imposed Sales and Use ("S&U") tax assessment upon the corporate plaintiff for tax periods 2007-2011 under an audit reconstruction method of the corporate plaintiff's restaurant business, and consequent gross income tax upon the individual plaintiffs. Plaintiffs opposed the motion.

*

For the reasons stated below, the court denies the motion and will continue the trial to give Taxation the opportunity to put forward its proofs, if it so chooses. The court will then consider all the evidence before it in deciding whether plaintiffs have, by a preponderance of the evidence, proven what the correct S&U assessment should be. Trial will continue on January 4, 2018.

**BRIEF PROCEDURAL HISTORY**

On December 9, 2011, Taxation issued a Notice of Assessment Related to Final Audit Determination to the corporate plaintiff, an S corporation, imposing S&U tax of $655,638.15 for tax periods October 2007 to September 2011. With penalty and interest, the amount totaled $801,983.97.

As a result of the corporate audit, the individual plaintiffs, as owners of the S corporation, were deemed to have received a "constructive distribution" of S corporation income. This resulted in a gross income tax assessment upon them for the audited tax periods.

After an administrative protest, Taxation's conferee made adjustments to the markup percentage for food and increased the allowance for waste. This reduced the audited overall markup percentage, which in turn reduced the sales tax assessment. With no changes to the audited use tax assessment, the total S&U tax was reduced to $246,851, which with penalty and interest totaled $330,649 for the tax period October 2007 to September 2011. Corresponding reductions were effectuated to the individual plaintiffs' gross income tax liability. Taxation then issued its final determination.

On September 17, 2013, plaintiffs' timely filed a complaint in this court challenging the final determination.

On August 8, 2016, Taxation moved for summary judgment claiming that there were no materially disputed facts to support its contention that the corporate plaintiff lacked adequate books

and records. In support, it furnished the audit report (including the auditor's "diary" of events during the entire audit), plaintiffs' administrative protest, Taxation's conferee's report, and its final determination. Taxation sought an order affirming its final determination, which by law, is afforded a presumption of correctness.

Plaintiffs duly opposed the motion with certain documents and supporting certifications, contending that there were sufficient contemporaneous books and records which were provided to, but either rejected or refused to be considered by Taxation (such as bank statements and sale summaries), and that its electronically maintained records as to the restaurant sales were never reviewed by Taxation. Plaintiffs claimed that if tried, they could prove the existence of, and thus, the adequacy of books and records of the corporate plaintiff, which would then show that Taxation's S&U tax assessments were excessive.

After oral arguments, the court issued a letter opinion dated January 26, 2017, denying the motion for summary judgment. The court found that there was a genuine issue as to material facts, viz., as to the presence/maintenance of adequate books and records, and whether the same were perused by Taxation. The court however granted summary judgment on the use tax portion of Taxation's audited assessment since plaintiffs' opposition in this regard was insubstantial.[1]

Trial on the sales tax portion of the assessment was held for two days in September and October, 2017 respectively. At the end of plaintiffs' case, Taxation moved for involuntary

---

[1] The court also permitted plaintiffs to adduce testimony of the software consultant's principal over objections of Taxation that it was never notified that this individual would be a potential witness. The court however, imposed a monetary sanction upon plaintiffs for violating court rules as to lack of notice of witnesses, and adjourned the trial so Taxation could depose the individual. The court subsequently denied Taxation's motion to bar testimony of the software consultant's principal, which was made on grounds the individual was not an expert and in any event lacked personal knowledge of the functioning of the restaurant software at the plaintiff's restaurant. The court also denied plaintiffs' motion to submit summaries of documents for trial since they did not submit the necessary support for the same or provide the actual records for the court's review. At trial however, plaintiffs claimed they could produce only summaries of the daily restaurant sale transactions.

dismissal of the complaints under R. 4:37-2(b). Taxation maintained that plaintiffs failed to meet their burden of proof and to overcome the presumptive correctness of its final determination.

**FINDINGS**

*(A) Standard Applicable for Deciding Motions Under R. 4:37-2(b)*

Rule 4:37-2(b), titled "Involuntary dismissal; effect thereof," provides as follows:

> (b) At Trial-Generally. After having completed the presentation of the evidence on all matters other than the matter of damages (if that is an issue), the plaintiff shall so announce to the court, and thereupon the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal of the action or of any claim on the ground that upon the facts and upon the law the plaintiff has shown no right to relief. Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.

A dismissal pursuant to a motion granted under R. 4:37-2(b) is one with prejudice, and "operates as an adjudication on the merits." R. 4:37-2(d).

In MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364 (Tax 1998), the Tax Court analyzed the application of R. 4:37-2(b) to a local property tax case by examining the evidentiary standard vis-à-vis the presumptive correctness of a tax assessment. It began the analysis with the established principle that assessments are presumptively correct, that this presumption "can be rebutted only by cogent evidence," which proof must be "'definite, positive and certain in quality and quantity.'" Id. at 373-74 (citing and quoting Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985)).

The court then ruled that before deciding the case on its merits, it must always find first whether the plaintiff has overcome an assessment's presumptive correctness. MSGW, supra, 18 N.J. Tax at 376. In so deciding, and where a motion is made under R. 4:37-2(b) "at the close of plaintiff's proofs," the court "must accept such evidence as true and accord the plaintiff all

4

legitimate inferences which can be deduced from the evidence." Ibid. Even if the defendant does not make this motion, the court must, at conclusion of the trial, "first determine whether the presumption of validity has been overcome," for which purpose it must view the evidence "as if a motion for judgment at the close of all the evidence had been made pursuant to R. 4:40-1 . . . employing the evidentiary standard applicable to such a motion." Id. at 377 (quoting and relying upon Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)). Thus, "the presumption of validity has been overcome should be determined only once, either at the close of the plaintiff's proofs in the context of a R. 4:37-2(b)(2) motion, or at the conclusion of the trial." MSGW, supra, 18 N.J. Tax at 380.

In either situation (i.e., with or without a R. 4:37-2(b) motion), the examination of the evidence is never stringent. Rather, the evidence that is "required under R. 4:37-2(b)" is considered "using the artificial standard, or 'rose-colored glasses.'" Id. at 379 (relying on Borough of Rumson v. Peckham, 7 N.J. Tax 539 (Tax 1985) which court had termed the presumption as having an "artificial probative effect" and whose "bubble bursts" when a taxpayer provides sufficient proof to overcome the presumption).

Nonetheless, plaintiff must proffer evidence that is "sufficient to demonstrate" what the assessment should be "thereby raising a debatable question as to the validity of the assessment." MSGW, supra, 18 N.J. Tax at 376. That evidence, even when viewed through the "rose-colored glasses" must show that plaintiff's complaint is "based on sound theory and objective data rather than on mere wishful thinking." Ibid. (citation and internal quotation marks omitted).

If the court grants a motion for involuntary dismissal or decides at the conclusion of the case, on its own, that plaintiff did not overcome the presumptive correctness of an assessment, the complaint is subject to dismissal. Id. at 378-79.

If, however, the court "determines, in ruling on the R. 4:37-2(b) motion, that the presumption has been overcome," then it must "weigh and evaluate the evidence and decide the appeal on the merits whether or not the plaintiff's proofs, in themselves, are sufficient to overcome the presumption." Id. at 377. Plaintiff's burden at this stage is by a preponderance of the evidence. Ibid. The court can nonetheless affirm an assessment, despite its determination that plaintiff provided enough evidence to rebut the presumption, because "[e]vidence which is sufficient . . . to overcome the presumption . . . is not necessarily sufficient to carry" the plaintiff's "burden of proof when all the evidence is subjected to critical analysis and weighing by the court." Id. at 379. Thus, at this juncture, the court does not view plaintiff's evidence as a "mechanical" function or as benignly as it does for purposes of deciding a R. 4:37-2(b) motion.[2]

*(B) Evidence Need to Overcome the Presumptive Correctness of Taxation's Determinations*

In Yilmaz, Inc. v. Director, Div. of Taxation, 22 N.J. Tax 204 (Tax 2005), aff'd, 390 N.J. Super. 435 (App Div.), certif. denied, 192 N.J. 69 (2007), the Tax Court incorporated the standards and burden of proof applied in challenges to local property tax assessments, to challenges involving assessments arising from Taxation's audit reconstruction, because both assessments are entitled to the same presumptive correctness. 22 N.J. Tax at 231-32, 236 (citing to Atlantic City Transp. Co. v. Director, Div. of Taxation, 12 N.J. 130 (1953), which relied upon a local property tax case, Aetna Life Ins. Co. v. City of Newark, 10 N.J. 99 (1952)). The court concluded that where the issue "is the reasonableness of the methods employed by [Taxation] for an audit period

---

[2] In MSGW, supra, both parties had provided expert reports/testimony. See 18 N.J. Tax at 373. The defendant there did not move to dismiss at the end of plaintiff's proofs. Id. at 380. The court ruled that "the entire record, when viewed under the evidentiary standard discussed above, contains adequate evidence to enable plaintiff to overcome the presumption of validity which attached to the assessments under appeal." Ibid. It then proceeded to "weigh and evaluate all the evidence and determine whether either party has established, by a preponderance of the evidence, that the true value of the subject property as of the applicable assessment dates was such as to warrant adjustments in the assessments." Ibid.

6

where plaintiff ha[s] virtually no records of its receipts," and where by statute, a vendor is required to "demonstrate by way of adequate records that it has correctly reported the tax," then, such plaintiff-vendor must provide evidence which is "definite, positive and certain in quality and quantity," a standard developed and applied in challenges to local property tax appeals. Id. at 230, 233-34. Specifically, the court held as follows:

> [I]n a case involving a challenge to a determination by [Taxation] based on an audit of a cash business, involving only factual issues and the methods employed by [Taxation], the standard set forth in Pantasote Co., supra . . . is a reasonable and practical one. That is, the presumption that [Taxation's] assessment is correct can be rebutted only by cogent evidence that must be 'definite, positive and certain in quality and quantity to overcome the presumption.' . . . That evidence must focus on the reasonableness of the underlying data used by [Taxation] and the reasonableness of the methodology used . . . . An 'aberrant' methodology will overcome the presumption of correctness . . . . An imperfect methodology will not.
>
> [Yilmaz, supra, 21 N.J. Tax at 236 (citing Pantasote Co., supra, 100 N.J. at 413)].

Although the Appellate Division in affirming the decision stated that a taxpayer who has inadequate books and records must be held "to a higher standard, particularly for the assessment of a 'trust fund tax.'" such as the sales tax, "see 390 N.J. Super. at 442, it is clear that the nature of evidence needed to overcome the presumptive correctness of a tax assessment, whether it be imposed by Taxation (as in Yilmaz, supra), or by a taxing district (as in MSGW, supra), are the same. In other words, whether it be local property tax or S&U tax, the "type of evidence required to be produced by the taxpayer," is the same, namely, "definite, positive and certain in quality and quantity," and not mere speculation or subjective conclusions. This conclusion is logical because

7

the Appellate Division noted that the trial court's incorporation of the evidentiary standard was "logical and consistent with case law." Yilmaz, supra, 390 N.J. Super at 441.[3]

The Appellate Division did observe that a taxpayer can present "competent independent evidence, expert or otherwise, to challenge that presented by" Taxation to prove either an aberrant methodology or excessive assessment amount, or provide evidence through cross-examination of the auditor to provide evidence "that is sufficient to overcome the presumed correctness of" Taxation's assessment. Id. at 442. Again, however, this does not mean that the evidentiary standard of presenting cogent evidence is any higher or different from that stated in MSGW, supra.

*(C) Rule 4:37-2(b) Motions vis-à-vis Overcoming the Presumptive Correctness of Taxation's Determinations*

The decision in Yilmaz case did not indicate that there was a motion under R. 4:37-2(b). Rather, the court rendered its opinion after conclusion of the proofs of both parties. However, it is untenable to contend that because of this fact, and since Taxation's final determinations enjoy a presumption of correctness, the MSGW's standards in examining a motion under R. 4:37-2(b), cannot be applied to State tax matters.

First, the court rule applies to all civil cases. Therefore, the standards for analyzing the motions set forth by our Supreme Court applies to State tax matters involving Taxation's final determinations. The Supreme Court has interpreted the rule as follows:

> In the case of motions for involuntary dismissal, the test is, as set forth in R. 4:37-2(b) and equally applicable to motions for judgment [under R. 4:40-1], whether the evidence together with the legitimate inferences therefrom, could sustain a judgment in . . . favor of the party opposing the motion, i.e., if, accepting as true all the evidence which supports the position of the party

---

[3] In United Parcel Services Co. v. Director, Div. of Taxation, 25 N.J. Tax 1, 12-13 (Tax 2009), aff'd, 430 N.J. Super. 1 (App. Div. 2013), aff'd, 220 N.J. 90 (2014), the Tax Court noted that the assignment of a presumptive correctness to Taxation's final determinations was itself derived from local property tax cases, and the "evolution" of using the same standards/burden of proof in local property tax matters and state tax cases justified extension of such standards for analyzing challenges to corporation business tax ("CBT") assessments.

defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion.

[Dolson, supra, 55 N.J. at 5-6 (citation and internal quotation marks omitted)].

Second, the MSGW court incorporated the Supreme Court's standard for deciding motions to dismiss under R. 4:37-2(b) when advanced in local property tax cases. Thus, that same standard, as explicated by the highest court, should apply to tax cases such as the instant matters.

Third, the MSGW court analyzed the evidentiary standard as to the presumption of correctness by relying on the Supreme Court's decision in Pantasote, supra. See MSGW, supra, 18 N.J. Tax at 373-74. That same case was relied upon in Yilmaz, supra, an S&U case, to incorporate the evidentiary standard and burden of proof applied in challenges to local property tax assessments because both assessments are entitled to the same presumptive correctness.[4]

Consequently, there is nothing to suggest that the Yilmaz court would (or could) have applied a heightened or different standard in analyzing a R. 4:37-2(b) motion in a trial involving a State tax matter (such as S&U tax assessments involving an audit reconstruction), or that it rejected the mechanical/"rose-colored glasses" scrutiny afforded to evidence in the context of a R. 4:37-2(b) motion.

In light of the above analysis, this court, in deciding Taxation's motion to dismiss under R. 4:37-2(b), will view the evidence proffered by plaintiffs with the liberality afforded to such

---

[4] Even the term "aberrant" as used in Yilmaz, supra, has its genesis in local property tax cases. See Pantasote, supra, 100 N.J. at 415 (an assessment's presumptive correctness is overcome when "the quantum of the assessment was far wide of the mark of true value" or "is so far removed," or if "the method of assessment itself is so patently defective and aberrant."). However, "inadequacies in the municipality's evidence or deficiencies in the assessment methodology will not impugn the presumption of validity." Ibid.

evidence for identical motions made in civil cases as well as local property tax assessment cases in determining whether plaintiffs provided sufficiently competent evidence that raise a debatable question as to the correctness of Taxation's final determination. If the court denies the motion, it will weigh all evidence before it to decide whether plaintiffs, by a preponderance of the evidence, have proven what the correct S&U assessment should be. Of course this decision will be made after providing Taxation the opportunity to go forward with its proofs. See R. 4:37-2(b) (a movant makes a dismissal motion "without waiving . . . [its] right to offer evidence in the event the motion is not granted."). See also R. 4:40-1 (where a motion for judgment "is made prior to the close of all the evidence and is denied, the moving party may then offer evidence without having reserved the right to do so.").

*(D) This Court's Denial of a Pre-Trial Summary Judgment Motion Does Not Require it to Apply any Higher or Other Standard in Determining a R. 4:37-2(b) Motion vis-à-vis Overcoming the Presumptive Correctness of Taxation's Determinations*

As noted above, the court had denied Taxation's summary judgment to dismiss the complaints there were material facts in dispute as to the adequacy of books and records. The matter therefore proceeded to trial so plaintiffs could prove they did not suffer an inadequacy of books and records, and what the correct assessment should be. At the end of plaintiffs' proofs, Taxation moved to once again dismiss the complaints on grounds plaintiffs did not prove the adequacy of books and records, thus, did not overcome the presumptive correctness of Taxation's final determination, but under R. 4:37-2(b).

It is true that in a summary judgment motion, whether there exists a genuine issue as to a material fact in dispute

> requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are

10

sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. This assessment of the evidence is to be conducted in the same manner as that required under Rule 4:37-2(b).

[Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)].

Thus, "the essence of the inquiry in each [motion under R. 4:37-2(b) for directed verdict at end of plaintiff's case, or under R. 4:40-1 or under R. 4:46-1 for summary judgment] is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brill, supra, 142 N.J. at 536 (citations and quotations omitted). Yet this "process . . . is not the same kind of weighing that a factfinder (judge or jury) engages in when assessing the preponderance or credibility of evidence" since the motion judge grants all inferences in favor of the non-movant, whereas, the "ultimate factfinder may pick and choose inferences from the evidence." Ibid.

Although the standard for the "assessment of evidence" is the same in determining a summary judgment motion or a R. 4:37-2(b) motion, a party denied summary judgement pre-trial is not precluded from moving for involuntary dismissal or directed verdict under R. 4:37-2(b). Similarly, while the analysis in either motion will be the same, a denial of a summary judgment pre-trial will not preclude a court from denying a motion under R. 4:37-2(b). In deciding a summary judgment motion, the court examines if there are materially disputed facts as to which there is a genuine issue. At trial following denial of the summary judgment, the material facts which were disputed will be (or sought to be) proven. In thereafter deciding a motion to dismiss after plaintiff's proofs, and as applied to tax cases, this court will be analyzing whether the taxpayer has overcome the presumptive correctness afforded Taxation's assessments with its proffered proofs using the standards articulated in R. 4:37-2(b) (or under R. 4:40-1 if no such motion was made) as explicated in MSGW, supra.

11

Thus, here, when this court denied Taxation's pre-trial summary judgment motion, it did not decide that plaintiffs overcame the presumptive correctness of Taxation's final determinations. Therefore, it is incorrect to conclude the only thing left is for the court to weigh plaintiffs' evidence under a preponderance standard. Such a construction would also violate R. 4:37-2(b) or R. 4:40-1 as Taxation should have the opportunity and ability to present its own proofs.

*(E) Plaintiffs Have Provided Sufficiently Competent Evidence to Overcome the Presumptive Correctness of Taxation's Determination*

Plaintiffs provided testimony of both owners of the corporate plaintiff (the individual plaintiffs herein). They testified as to the restaurant's operations, and how the daily receipts were accounted/deposited. Plaintiffs also provided testimony of the corporate plaintiff's bookkeeper who testified as to the restaurant's operations; method/routine of collecting the daily receipts from each server; method/routine of reconciling those receipts with the computerized cash register; method/routine of reconciling the daily total collections with the daily total summaries produced by the computerized cash register; method/routine of running the summarized reports; the general ledgers that were maintained; and the history and use of the restaurant software. The corporate plaintiff's accountant testified as to the CBT returns preparation and recited the minimal differences between the federal and state corporate tax returns. He also testified that the corporate plaintiff's audit by the Internal Revenue Service for 2007 resulted in a $668 federal income tax liability for the individual plaintiffs, and for 2008 resulted in no changes to the corporate federal return filed.

Plaintiffs also provided testimony of the principal of a software company, which had installed and maintained a pre-written commercially available restaurant-specific software for the corporate plaintiff. The principal testified as to purpose and function of the restaurant software

12

installed in the restaurant's computers; how the computer monitors in the specific areas of the restaurant function; how the ordering of food/drink is traced at each location (restaurant, bar, kitchen); the "queuing" functionality of the software by which the food/drink is tracked from its order-to-preparation-to-service stages; the manner in which summary records (daily, monthly, annual) are computed by the software; and some of the reasons why daily records of the inputted data became unavailable or inaccessible (such as due to software upgrades or replacements).

Plaintiffs further provided the following documents:[5]

(A) Copies of statements of the corporate plaintiff's two bank accounts for 2008-2010. Included was a "Bank Deposit Summary" for each year prepared by the plaintiffs itemizing the monthly total deposits/credits from which items of the reversed bank errors, reversed checks/credits, transfers, and Commerce Bank Line of Credit Advances were deducted to show the "Net taxable deposits."

(B) Copies of the general ledger for 2007-2009. Included was a sheet summarizing the General Ledger Comparison to Tax returns for the last quarter 2007, 2008-2010, and the first three quarters of 2011. The summary showed that the gross receipts reported on the S&U returns for each period was lesser than that shown on the general ledger ($5,780 for 2007; $70,366 for 2008; $10,039 for 2009; $16,359 for 2010, and $1,958 for 2011). The difference between the gross receipts reported on the general ledger versus the CBT returns for 2008 and 2009 was -$1 and $2 respectively.

(C) Summaries of the daily/monthly cash registers for 2008-2011 and a "daily server report" dated May 21, 2017.

(D) Tax returns for 2007-2011. Included was a sheet summarizing the difference in the amounts reported on the CBT and S&U returns which showed that the receipts on the S&U returns for each year 2008-2010 was lesser than the receipts reported on the CBT returns ($70,367 for 2008; $10,037 for 2009; and $16,359 for 2010).

(E) Forms 1099-K issued by two "merchant card" (credit card) companies for 2011. Included was a comparison sheet showing the difference between the credit card receipts on the monthly summaries for 2011 versus the Forms 1099-Ks for 2011 (showing that the monthly summaries exceeded the 1099-Ks by $7,194.24).

---

[5] The documents were all admitted into evidence without objection by Taxation.

Plaintiffs contend that their proofs sufficiently demonstrated that they had more than adequate books and records, thus, Taxation's very basis for performing an audit reconstruction, which was a determination that there were inadequate books and records, was incorrect. They note that the bank statements amply demonstrate that Taxation's conclusion of irreconcilably large bank deposits (for 2008, the sample year) was baseless, which is yet another reason why Taxation's decision to proceed with the audit reconstruction is questionable. Finally, they argue, although the books and records concededly show a difference in receipts as reported for S&U versus CBT, the discrepancy is markedly lesser than the assessment, thus, proves that quantum of assessment is excessive. They point out that the aberrance is also evident because Taxation's markup results in an almost 150% increase of sales which would imply an equally high amount of unreported (thus, audited purchases), yet Taxation did not increase the purchase amounts during audit and had accepted the purchases reported on the corporate plaintiff's CBT returns as credible.

Taxation argues that even if one donned "rose-colored glasses," the evidence proffered by plaintiffs is nowhere close to overcoming the presumptive correctness of its sales tax assessment for the tax years at issue. It notes that until the day of trial, and even during trial, plaintiffs chose not to produce a single cash-register tape that would verify the cash register summaries despite having restaurant-specific software, which per the software consultant's testimony, is capable of printing out a breakdown of each individual item sold each day, even if it is only for periods in 2010 or 2011 when the software was replaced with the current software. Taxation argues that this single fact combined with the testimony that daily cash register tapes were not retained, is fatal to plaintiffs' complaint, as was the failure to provide bank statements and general ledgers.

The court finds that plaintiffs have provided evidence that is of sufficient quality and quantity to raise a question as to the presumptive correctness of Taxation's determination that the

corporate plaintiff maintained inadequate books and records justifying an audit reconstruction and the consequent S&U assessment.[6] Plaintiffs' evidence specifically targets Taxation's assertions and conclusions of the purported inadequacy of books and records due to irreconcilable bank deposits for 2008 by providing objective documentary evidence, such as bank statements showing entries of inter-bank transfers, reversed checks, and reverse credits due to bank errors, and testimonial evidence as to record-keeping. The 2008 bank statement clearly showed a reversal of approximately $1,757,764.10 due to bank error of debiting the account for insurance premiums, which incorrectness was evident when comparing the total insurance payments for 2008 in the general ledger (which was about $123,000). Although Taxation claimed it proceeded with the audit reconstruction because it was never provided with the bank statements or general ledgers for other years included in the audit, and not solely due to the 2008 bank deposit discrepancy, plaintiffs (who refuted the allegation of non-provision) proffered those documents for, and at trial. Cf. Yilmaz, supra, 22 N.J. Tax at 217 (noting that the taxpayer's accountant's reconstruction of the bank statements did not contain any "supporting documentation . . . such as loan documents or bank statements," and the same were not "produced at trial."). At no point did Taxation object to their use as evidence or dispute their validity.

The court also finds the testimony of the software company's principal of how near-impossible it is to manipulate the software to conceal sales (thus, receipts) and further that he had never used or dealt with a software known to do so, would raise a question in the mind of a fact-finder as to the correctness of Taxation's complete rejection of the computer-generated summaries provided by the plaintiffs, and thus, the correctness of its determination that the books and records

---

[6] As noted above, the court granted Taxation's motion for summary judgment as to the use tax assessment. However, since the error rate for the use tax was based upon the 2008 audited gross receipts, and the validity of the same was yet to be tried, the amount of use tax to be assessed was left open.

were inadequate.  See also N.J.A.C. 18:24-2.3(a) (can "dispose [] individual . . . cash register tapes, . . . after . . . 90 days from the last date of the most recent . . . period for the filing of sales tax returns to which such individual sales documents pertained.");[7] Charley O's, Inc., t/a Scotty's Steakhouse v. Director, Div. of Taxation, 23 N.J. Tax 171, 187 (Tax 2006) (use of cash register summaries can be permissible substitutes for the daily cash register tapes); cf. Yilamz, supra, 390 N.J. Super. at 438 (finding that the taxpayer "did not retain cash register receipts, did not use guest checks and did not maintain summary records of sales.").

Admittedly, the receipts reported in the S&U returns are somewhat lower than the reported receipts in the general ledgers and on the CBT returns.  The court was also unable to trace each of the entries that plaintiffs claim should be reduced from the total bank deposits (reversed checks, inter-bank transfers and line-of-credit advances).  However, these factors do not destroy the sufficiency of the quality and quantity of evidence proffered for purposes of a R. 4:37-2(b) motion under the "rose-colored glasses" standard and where this court is satisfied that plaintiffs' proofs are not subjective or "wishful thinking."  Further, although plaintiffs did not provide any expert's evidence to show that Taxation's markup analysis or data used for such markup was an aberrant methodology, this does not require granting Taxation's motion.  This is because the plaintiffs are primarily contesting Taxation's assertions that the corporate plaintiff maintained inadequate books and records and which records, if perused by Taxation, would not have required a markup and would not have resulted in so excessive an assessment, even if some inaccuracies were present.

---

[7] Effective May 16, 2016, such records must be maintained "for a period of four years from the last date of the most recent quarterly period for the filing of sales tax returns," and further, retain the "summary sales records" for at least "four years from the last date of the quarterly period for the filing of sales tax returns."  See 47 N.J.R. 2919(a) (Dec. 7, 2015); 48 N.J.R. 824(a) (May 16, 2016).

**CONCLUSION**

For the aforementioned reasons, the court denies Taxation's motion under R. 4:37-2(b). Trial will continue on January 4, 2018 to allow Taxation the opportunity to, if it so desires, present any and all proofs. The court will then decide whether plaintiffs have proven, by a preponderance of the evidence, what the S&U assessments should properly be.

Very Truly Yours,

Mala Sundar, J.T.C.

17