ANDREW, J. T. C.
This is a local property tax proceeding involving the value of a sanitary landfill site which, as of the assessment date, was nearing the end of its economic life as an ongoing landfill operation. Plaintiff alleges that its property was assessed in excess of its true value for the tax year 1976.
The subject consists of 25.37 acres which had been utilized as a sanitary landfill for approximately 20 years prior to the assessment date of October 1,1975 for the tax year 1976. The land is designated as Block 400, Lot 3C on the tax map of Edison. The land was assessed at $64,100. This assessment was affirmed by the Middlesex County Board of Taxation. Plaintiff appealed the county board determination to the Division of Tax Appeals and the matter was transferred to the Tax Court pursuant to NJ.S.A. 2A:3A-26.
It should be noted that the taxpayer had also filed petitions of appeal to the Division of Tax Appeals with regard to Block 376, Lots 3A and 3B, which are land parcels adjacent to the subject, and Block 376, Lot 1. At the outset of the proceeding, however, taxpayer withdrew these petitions leaving only the value of Block 400, Lot 3C for the consideration of the court.[1]
Taxpayer’s expert indicated that the subject was a liability rather than an asset as it was at the end of its economic life as a sanitary landfill. It was his understanding that as of the critical assessment date of October 1,1975, the landfill was on the verge of being closed.
He stated that he first viewed the property in September of 1979 and noted that the entire site was a mound 60 to 80 feet above the grade of the surrounding area except for a level perimeter of approximately 50 feet around the mound. He indicated that in his opinion the property had no use or utility, could not be sold, and therefore, had no value.
*63 To substantiate his expression of a lack of value, taxpayer’s expert stated that the subject could not be used for building purposes because the bearing qualities of the soil were neither suitable for nor capable of supporting any structures. He was of the opinion that the traditional approaches to value were not applicable. He indicated that the market data approach could not be utilized because there were no sales of comparable property. The income approach was deemed inapposite because the value derived in this manner would be indicative of a value for the landfill business which would include goodwill and other items unassociated with land value.[2] The cost approach was ignored because of the absence of improvements.
Although taxpayer’s expert concluded that there was no feasible use for the property, he did observe that the subject was zoned for heavy industrial use and that it was possible to use the land to satisfy a 50% building coverage limit imposed by the Edison zoning ordinance.[3]
Edison’s expert agreed that the subject in and of itself had no utility as of the assessment date. He also agreed that the subject could not be used for building purposes. However, his concurrence with taxpayer’s expert ended at that point. It was the opinion of Edison’s expert that the subject had utility in conjunction with contiguous property. This utility could be found in the ability of the subject to assist in the satisfaction of the lot coverage requirement of the zoning ordinance. He noted that plaintiff owned Block 376, Lots 3A and 3B which were to the north of and contiguous to the subject. Since the subject *64 had utility in conjunction with an adjacent parcel Edison’s expert felt that sales of property comparable in utility would demonstrate a value for the subject. He indicated that the subject had a value of $3,000 per acre which produced an overall value of $76,000 ($3,000 X 25.37 acres). This value was derived from a 1971 sale of 183.59 acres of vacant land located on the eastern boundary of the subject. The comparable property was zoned for heavy industrial use, was below grade and had been used for a mining operation.
Edison’s expert testified that the comparable property sold for $8,218.71 an acre. He adjusted the sale price downward because of the superiority of the comparable property to the subject. The adjustment of 60% was based primarily on the fact that the subject was a closed landfill operation as well as on the inferior location of the subject. The expert’s choice of a 60% adjustment factor was not based on any specific data but on his knowledge and experience as an appraiser. He was aware that the comparable property was capable of supporting a structure while the subject was not. Further, he did not consider the liability imposed upon an owner of a closed landfill or the cost of maintaining a landfill in a closed condition pursuant to the requirements of N.J.A.C. 7:26-2.9.[4] He did observe, however, that a prospective purchaser would want to know the liabilities and costs involved.
Fundamentally, value is dependent upon use. Any parcel of land should be examined for all possible uses and that use which will yield the highest return should be selected. American Institute of Real Estate Appraisers, The Appraisal of Real Estate (7th ed. 1978) at 43. This concept or theory is known as “highest and best use” and has been defined alternately as “the use that at the time of appraisal is the most profitable likely *65 use” or “the available use and program of future utilization that produces the highest present land value.” Ibid. Highest and best use contemplates a use which will fully develop land potential. Id. at 136. However, highest and best use considerations have as a prerequisite a probability of achievement. The projected use cannot be remote, speculative or conjectural. Id. at 138.
It must also be observed that the utility of a parcel of land may be affected by factors and forces which are external to the land itself. In Stack v. Hoboken, 45 N.J.Super. 295, 299, 132 A.2d 314 (App.Div.1957) the court stated,
In assessing the value of land, account should be taken not only of its actual use and physical condition, but also of interrelated uses connecting it with other property, as, where the land in question is part of a larger tract having more or less value as an economic unit.
It is well known that zoning may substantially increase or decrease the value of property because of the allowance or limitation of uses within a particular zone. The Appraisal of Real Estate, supra at 119. Within zoning concepts there has been a trend during the last 50 years to reduce the percentage of a lot that a structure will be permitted to occupy with a concomitant affect on land value. Ibid.
The value of property can be affected adversely by governmental regulations as occurred in Cappture Realty Corp. v. Elmwood Park, 126 N.J.Super. 200, 313 A.2d 624 (Law Div. 1973), aff’d 133 N.J.Super. 216, 336 A.2d 30 (App.Div.1975), where the court took cognizance of the impact that flood regulations have upon the value of real property. The converse is also true. Regulations can have the effect of increasing or sustaining value. The Appraisal of Real Estate, supra at 119. Therefore, I cannot ignore the value theory advanced by Edison’s expert.
The experts agreed that the subject in and of itself has little if any utility for the reasonably foreseeable future. Although it did not affect his ultimate conclusion that the subject is worthless, taxpayer’s expert conceded that it could be used to satisfy *66 the coverage requirement of the zoning ordinance in conjunction with a contiguous parcel.
The task assigned to the court is .to determine the market value which this theory would produce. It is the court’s obligation to apply its judgment to the valuation data submitted by the experts and to ascertain and determine the true value of the subject provided there is enough substantial and competent evidence to enable the trier of the facts to determine true value. Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 74, 208 A.2d 153 (App.Div.1964).
It is fundamental that evidence of sales of comparable property is helpful in the search for true value only where there is a substantial similarity between the properties so as to admit of reasonable comparison. The comparable property offered by Edison’s expert was capable of utilization for building purposes while the subject is not. Edison’s expert also candidly admitted that he did not consider the costs attendant to maintaining the subject in a closed condition nor did he consider any impediments associated with a closed landfill. I note that the 60% downward adjustment to the value of the comparable property is without any support in the record other than its basis in the knowledge and experience of the expert. The weight to be given to an expert’s testimony relative to such adjustments depends upon the facts and reasoning which form the basis of the opinion. An expert’s conclusion can rise no higher than the data providing the foundation. Passaic v. Gera Mills, 55 N.J.Super. 73, 150 A.2d 67 (App.Div.1959), certif. den., 30 N.J. 153, 152 A.2d 171 (1959). If the bases for the adjustments are not made evident the court cannot extrapolate value.
Considering all of the foregoing it is manifest that the subject had little value in and of itself on the assessment date. However, it did have value for the utilitarian purpose of partial satisfaction of the coverage requirement of Edison’s zoning ordinance when considered in conjunction with contiguous parcels. The difficulty is that the record is devoid of any testimony which would assist the court in ascribing the quantum of value *67 for the subject pursuant to the valuation theory advanced by Edison’s expert. The taxpayer has presented no evidence with regard to the value of the subject when considering interrelated uses connecting it with other adjacent property. The testimony of Edison’s expert does not materially assist in this regard due to the lack of an objective foundation for his 60% adjustment and the paucity of sales data.
I find that I cannot accept the opinion of either expert as providing a correct estimate of the value of the subject property nor can I make adjustments to the valuation data submitted to enable the court to ascertain and determine the true value of the subject pursuant to the obligation of the court as advanced in Samuel Hird & Sons, Inc. v. Garfield, supra.
The burden to establish the true value of the subject is upon the taxpayer in this matter. I find that plaintiff has failed to establish by a preponderance of the evidence that the subject property is worthless in view of the economic reality that it can be used in conjunction with adjacent land as heretofore indicated.
Therefore, I instruct the Clerk of the Tax Court to dismiss plaintiff’s petition for failure to sustain the requisite burden of proof necessary to alter the judgment of the Middlesex County Board of Taxation. Glenwood Realty Co., Inc. v. East Orange, 78 N.J.Super. 67, 187 A.2d 602 (App.Div.1963).

 Block 376, Lots 3A and 3B constituted 65.16 acres to the north of and adjacent to the subject while Block 376, Lot 1 consisted of .7 acre. The record does not indicate the location of the latter parcel.

 Robert L. Foreman, MAI, SRPA has written that, “The only appropriate method of appraising a sanitary landfill is to arrive at the present worth of the income stream from operation of the landfill over its remaining economic and physical life, and to add to this the present worth of the reversion after the site has been filled.” Foreman, Appraisal of Sanitary Landfills, Friedman Encyclopedia of Real Estate Appraising (3d ed. 1978) 1083.

 Hinder the area and height provisions for the Heavy Industrial Zone of the zoning ordinance in Edison there is a regulation that building or improvement coverage on a lot cannot exceed 50% of the total lot, exclusive of accessory structures.

 N.J.A.C. 7:26-2.9 provides that any landfill that is terminated under the provisions of the administrative regulations must be maintained in accordance with landfill design requirements and must remain in compliance with pertinent regulations. The responsibility for continued maintenance is upon the property owner of record.