AXELRAD, J.T.C.
This local property tax appeal involves Block 302, Lot 18, commonly known as 32 North Boom Way, Little Egg Harbor Township (Ocean County), New Jersey. The property consists of a somewhat irregularly shaped parcel of land containing approximately 6.75 acres zoned “MC” (Marine Commercial) improved and utilized as a iriarina, with 70 boat slips. The property is improved with a two story masonry building containing a retail shop on the first floor and an apartment on the second floor, a bait shop, and a small residence facing North Boom Way. A six foot chain link fence partially separates the building from the actual marina.
The original assessment of the property for 1992 was:
Land $419,500
Improvements $418,700
Total $838,200
As a result of a revaluation for the tax year 1992, discrimination is not an issue. Chapter 123 does not apply. N.J.SA 54:51, A-6.
The taxpayer appealed the original assessment and on October 6, 1992, the Ocean County Board of Taxation reduced the assessment and entered a judgment as follows:
Land $419,500
Improvements $280,500
Total $700,000
This judgment was appealed by the taxpayer to the Tax Court.
The issues before the court involve (1) the presumption of correctness of the county board judgment (2) the proofs necessary *328 to support a determination by the court that the site contains excess land and (3) its valuation under the “highest and best use” standard.
At trial both parties’ experts utilized the income approach to valuation and calculated virtually identical net annual operating income, ie., taxpayer — $57,998; municipality — $57,652. Both parties used the 1992 tax rate of $2,134 and differed only in the determination of the capitalization rate, excluding taxes. The taxpayer’s expert, citing higher risk and greater yield, used a 12% capitalization rate plus taxes, resulting in an indicated value of $415,000, while the municipality’s expert utilized a capitalization rate of 10% plus taxes reflecting the 7.5% prime rate in effect for 1991, resulting in an indicated value of $475,000. I believe that a capitalization rate of 10% in a 7.5% prime rate environment is more accurate than a 12% capitalization rate. As such, the fair market value of the parcel determined by the income approach is $475,000.
The taxpayer asserts that the total valuation of the property is that produced through the income approach. The municipality contends that the site contains approximately 1% to 1% acres of excess vacant land, not needed to support the existing improvements or use. The municipality further submits that the highest and best use of such excess land should be under an R-50 zoning, which would permit a subdivision of 10 lots. The additional lots would increase the value by $205,500 resulting in a total assessment of the subject parcel of $680,500.
The municipality claims that the taxpayer failed to produce sufficient competent evidence to overcome the presumption of correctness of the county board judgment, and thus judgment should be entered dismissing the appeal. If that were the case, I would be obligated to affirm the county board judgment of $700,-000 when, in fact, the municipality’s own proofs, if accepted in full, support a valuation of only $680,500.
The municipality has misconstrued the law involving the “presumption of correctness” in local property tax appeals. In *329 appeals to the Tax Court there is a presumption that a judgment entered by a county board of taxation is correct. Riverview Gardens v. North Arlington Bor., 9 N.J. 167, 87 A.2d 425 (1952). This presumption stands until it is overcome by evidence that is sufficiently “definite, positive and certain in quality and quantity” to prove a valuation different from the county board’s judgment. Ford Motor Co. v. Edison Tp., 127 N.J. 290, 604 A.2d 580 (1992); Pantasote Co. v. Passaic, 100 N.J. 408, 495 A.2d 1308 (1985); Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 89 A.2d 385 (1952).
At trial, both the taxpayer and municipality presented expert testimony that the valuation of the subject property was below the assessment determined by the county board. I find that for purposes of overcoming the presumption neither expert’s opinion is entitled to greater weight than the other expert’s opinion.
It is the court’s obligation to apply its judgment to the valuation data submitted by the experts and to determine the value of the parcel, provided there is enough substantive and competent evidence to enable the trier of fact to determine true value. Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 74, 208 A.2d 153 (App.Div.1965); Inmar Assocs., Inc. v. Edison Tp., 2 N.J.Tax 59, 66 (1980). The presumption of correctness was overcome when both parties presented credible expert testimony sufficient to prove valuation below the county board’s judgment. Pantasote, supra, 100 N.J. at 417, 495 A.2d 1308. The focus then shifted to a consideration of the ease on the merits and a determination of the proper valuation of the property.
Only land beyond the normal needs of a particular use and that which is not necessary to support the existing improvements, can be considered excess land. Such excess land must be clearly identified and valued at its highest and best use and added to the value of the lot as currently used, in order to ascertain the value of the lot as a whole. American Institute of Real Estate Appraisers, The Appraisal of Real Estate at 212, 294 (10th ed. 1992).
Highest and best use is defined as “the reasonably probable and legal use of an improved property which is physically *330 possible, appropriately supported, financially feasible, and that which results in the highest value, i.e. most profitable”. The Appraisal of Real Estate, supra, at 275, 280-82. See also Six Cherry Hill, Inc. v. Cherry Hill Tp., 7 N.J.Tax 120, 128 (1984), aff'd, 8 N.J.Tax 334 (App.Div.1986); Inmar Assocs., Inc. v. Edison Tp., supra, 2 N.J.Tax at 65. The highest and best use is shaped by competitive forces within the market where the property is located. Highest and best use considerations have as a prerequisite a probability of achievement. The projected use cannot be remote, speculative or conjectural. The Appraisal of Real Estate, supra, at 275. See also Inmar Assocs., Inc. v. Edison Tp., supra, 2 N.J.Tax at 65. The tests of “legally permissible” and “physically possible” must be applied before the tests of “economically feasible” and “maximally productive”. The Appraisal of Real Estate, supra, at 275.
There is no dispute between the parties that the highest and best use of the parcel, with the exception of the % to 1% acres delineated by the municipality as excess land, is as currently used, i.e., marine-commercial. The burden is on the municipality to demonstrate that there is excess land as defined by law, that the highest and best use is under E-50 zoning, and to establish the fair market value. United Jersey Bank v. Lincoln Park Bor., 11 N.J.Tax 549, 558 (Tax 1991); Six Cherry Hill, Inc. v. Cherry Hill Tp., supra, 7 N.J.Tax at 126; Inmar Assocs., Inc. v. Edison Tp., supra, 2 N.J.Tax at 67. In this case the municipality has failed to present sufficient proof in support of its position.
The municipality’s appraiser candidly testified that he made a visual determination of the amount and location of the vacant land that he deemed superfluous to the current use of the site without reference to any survey or topographical map. As a result of looking at the site and/or the tax map, he concluded that such excess land was located along Great Bay Boulevard, along Boom Way near the intersection with the Boulevard, and along Flax Isle Drive between the existing dwelling and the lagoon. The subject land appeared to be flat and level, with some portions heavily *331 wooded. There was no indication that the appraiser had actually walked this specific area.
It appeared from photographs and from the credible testimony of the municipality’s expert that the marina was not visible from Great Bay Boulevard due to the heavily wooded area at the Great Bay side of the property and that the only view of the marina was by way of North Boom Way. In addition, the only access to the malina was from Boom Way, approximately 700-800 feet from the intersection with the Boulevard, or from Flax Isle Drive. The four by eight foot identification sign located near the intersection of the Boulevard and Boom Way could remain even if the frontage was developed according to the alternate use. The appraiser concluded that the front portion was totally unnecessary for the operation of the marina and related use of the property. He further testified that the residence with chain link fence and wooded area provided a natural separation between the marina and the frontage. No testimony was offered as to the basis for including the Flax Isle Drive frontage as excess land.
The testimony of plaintiffs appraiser that the entire property was used to support the currently zoned marine-commercial use was more compelling. The lagoon area was used for the storage of boats and related marina purposes, the middle portion was used for parking and the owner’s residence, and the vacant land fronting the Boulevard and Boom Way was used for advertising, including the identification sign and placement of boats for sale. The vacant frontage also improved the visibility of the marina. If the marina was at full occupancy, storage and other activities would encroach upon the front section, creating a need for flexibility in use of the vacant land. Reduction of the site would reduce the land available for parking, storage of boats, ingress and egress, signage and advertising. Overall, such subdivision and development would result in less operating area available to the customers of the marina would jeopardize the continued operation of the marina and its related uses and would significantly decrease the value of the marina.
*332 The first and most important test for determining highest and best use of a property is whether the alternative use is legally permissible. The use proposed by the municipality was not legally permissible on the assessing date. Six Cherry Hill, Inc., supra, 7 N.J.Tax at 129. There was no dispute that the parcel was situate in an “MC” (marine-commercial) zone. Residential use was not permitted.
The municipality was not precluded from showing the probability of a change in the zoning ordinance or the grant of a zoning variance to allow the suggested highest and best use of the property. The Appraisal of Real Estate, supra at 281. See also State by Comm’r of Transp. v. Caioli, 135 N.J. 252, 639 A.2d 275 (1994); Six Cherry Hill, Inc. v. Cherry Hill Tp., supra, 7 N.J.Tax at 129. However, there is insufficient evidence before the Court that an R-50 use was within a reasonable probability of being permitted in the foreseeable future within the vicinity of the property.
The parcel had never been subdivided and there were no applications pending for subdivision, rezoning or a zoning variance for any portion of the subject property. Contrary to the municipality’s argument that over the years numerous zoning variances were granted for residential use, the tax assessor, who was a current and former planning board member, testified that from 1986 through 1988, three use variances were granted by the municipal board in the general vicinity of the subject property for townhouse construction. No zoning changes or variance applications for such use were pending or had been granted by the municipality from 1989 through 1991. It is also interesting to note that in 1986 single family residences were a permissible use in an “MC” zone, which use was expressly prohibited by the municipality by amendment to its zoning ordinance in May, 1989. Thus, it is clear that as of 1989 the municipality had made an implicit decision to exclude residential development from “MC” zones. The absence of any pending or approved zoning changes or variances between 1989 and October 1,1991, clearly indicates that *333 it was unlikely that there would be a zoning change by the municipality.
Even assuming that R-50 residential use was a legal or reasonably probable alternative use of the purported excess land, the municipality’s experts failed to determine the physical possibility of the proposed subdivision and development of the seven conforming and three oversized lots. “Size, shape, area and terrain affect the uses to which land may be developed.” Appraisal of Real Estate, supra at 296. A proper determination of highest and best use cannot be made without consideration of these physical factors and there has been no such consideration in this case. Six Cherry Hill, Inc. v. Cherry Hill Tp., supra, 7 N.J.Tax at 132. The municipality’s arguments amount to little more than speculation that the property may accommodate an additional use.
It is undisputed that in order for this property to be used as suggested by the municipality, at the very minimum there must be a zoning change from- “MC” to “R-50” and subdivision approval. The municipality did not survey the property, review a topographical or flood map or perform any wetlands investigation or delineation of the property in order to ascertain the extent of land, if any, actually available for subdivision and development. The municipality’s experts testified that they basically determined the extent of development by marking off seven conforming (50 x 50) and three oversized (50 x 250 + ) lots on the tax map.
The municipality failed to present any data to support its position that such development would be economically feasible under the market conditions existing in the area on or about October 1, 1991. The municipality did not prepare any feasibility study or market analysis to ascertain the need for additional multi-family housing in the township. In fact, the uncontroverted testimony of the taxpayer’s expert was that there were a number of vacancies in townhouse and other residential developments in the area, including a new townhouse development across the street from the delineated land. Furthermore, the municipality did not inquire about the necessity for or probability of obtaining CAFRA, *334 DEPE or other environmental permits for the alternate use and the cost of such permits or remedial work required to obtain same.
It has not been shown that the proposed alternate use would be economically profitable. The weight to be given to an expert’s testimony depends on the facts and reasoning which form the basis for the opinion. An expert’s conclusion can rise no higher than the data providing the foundation. Inmar Assocs. v. Edison Tp., supra, 2 N.J.Tax at 66.
The municipality’s expert had no underlying support for his opinion of the valuation of the purported excess land. The municipality’s appraiser opined that the market value for typical lots would be $25,000 and for oversized lots would be $30,000 without providing any comparable sales data or other factual information.
No analysis was made of costs of development and construction or the need for and potential return from any given type of development. United Jersey Bank v. Lincoln Park Bor., supra, 11 N.J.Tax at 558. The municipality’s appraiser speculated about the projected subdivision cost without providing any factual basis. He also assumed the sale of two lots annually and calculated an absorption rate and projection of taxes over a five year period without obtaining a market analysis or reviewing the pro forma of similar developments. The appraiser then assumed that the commissions would be 10% and arrived at an indicated market value of the “excess land” of $205,500.
I find that the entire site is necessary to support the use and improvements of the marina; thus, there is no excess land to be considered for purposes of valuation of the subject property. Moreover, I find that even if a portion of the land was deemed excess, its subdivision and rezoning for R-50 residential development would effectively remove any visibility that the marina has from North Boom Way and would significantly reduce the operating area available for customers. Such alternative highest and best use would detract from the value of the marina. Thus, in this case the value of the land cannot be derived by adding the *335 indicated value under the income approach for a fully operational marina to the projected value of the excess land under its proposed alternative use. Finally, there is no foundation for the municipality’s valuation of the purported excess land.
I conclude that the municipality has not established excess land value. The subject property’s highest and best use is its present use. Its true value derived from the income approach for the 1992 tax year and its corresponding assessment is $475,000.
The court will accept the municipality’s proposed post trial allocation of land and improvements. The Tax Court Administrator is directed to enter judgment for the 1992 tax year as follows:
Land $194,500
Improvements $280,500
Total $475,000