**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5018-18T1
      A-5024-18T1

UNITED DEVELOPMENT
OF AMERICA, LLC,

  Plaintiff-Appellant,

v.

CITY OF PATERSON,

  Defendant-Respondent.

_____

    Submitted (A-5024-18) and Argued (A-5018-18)
    February 25, 2020 – Decided March 25, 2020

    Before Judges Yannotti and Currier.

    On appeal from the Tax Court of New Jersey, Docket
    Nos. 001142-2014 and 012633-2016.

    Romi Saleh argued the cause for appellant.

    Michael Thomas Wilkos argued the cause for
    respondent (Florio Kenny Raval, LLP, attorneys;
    Michael Thomas Wilkos, of counsel and on the brief).

PER CURIAM

Plaintiff United Development of America, LLC, appeals from judgments entered by the Tax Court on June 4, 2019, which affirmed local property tax assessments on its property in the City of Paterson (City) for 2014 (A-5024-18) and 2016 (A-5018-18). We address both appeals in this opinion. For the reasons that follow, we affirm the Tax Court's judgments.

I.

Plaintiff owns 1.94 acres of real property located at 44-48 Ryle Avenue, which is identified on the City's municipal tax map as Block 801, Lot 16. Plaintiff purchased the property on September 19, 2013, from Wells Fargo Bank, N.A. at a foreclosure sale for a reported consideration of $60,000.

The property is a K-shaped, 1.94-acre lot, containing frontage along Ryle Avenue and Geering Lane. The property is located in the City's First Ward area, near the Great Falls Historical Park and the City's downtown area. It is bordered by the Passaic River to the south and southeast.

The property contains several "mill-style" buildings, which were constructed in the early 1900's, comprising about 44,495 square feet of space. On October 1, 2013, and October 1, 2015, the valuation dates for the assessments at issue, the buildings were unoccupied and in poor condition.

On January 29, 2014, the City issued a notice informing plaintiff that its property tax assessment for 2014 was $2,349,400. On March 4, 2014, plaintiff filed a complaint with the Tax Court seeking direct review of the assessment pursuant to N.J.S.A. 54:3-21 and Rule 8:3-5(a)(3).

On February 2, 2016, the City informed plaintiff that its property tax assessment for 2016 was $1,254,500. Plaintiff filed an appeal with the Passaic County Board of Taxation (Board). On July 22, 2016, the Board entered a judgment affirming the assessment. Plaintiff then filed a complaint with the Tax Court seeking review of the Board's judgment. See R. 8:3-5(a)(1).

Tax Court Judge Joshua D. Novin conducted a single trial for both appeals.[1] In that proceeding, plaintiff presented testimony from a State-certified real estate appraiser, whom the judge accepted as an expert in the field of property valuation, without objection. The expert testified that as of October 1, 2013 and October 1, 2015 valuation dates, the property was located in the City's I-1 industrial zoning district, which permitted uses that include light industrial/manufacturing, public utilities, wholesaling establishments, motor

---

[1] The trial also included plaintiff's challenge to the City's property tax assessment for 2017, but the Tax Court dismissed the appeal because plaintiff did not present any evidence as to the market value of the property as of the October 1, 2016 valuation date. Plaintiff has not appealed from the Tax Court's judgment dismissing the appeal.

vehicle sales, business services, warehousing and storage, government offices, off-street parking facilities, and outdoor storage.

Plaintiff's expert stated that approximately 75-80% of the property is in the Passaic River regulatory floodway and the remaining 10-15% is in a designated flood zone. The expert said that a "small portion of the middle building" is located in a floodplain, and 100% of a portion of the rear building and the second industrial building are located in the flood zone.

The expert opined that the existing structures are functionally obsolete and cannot be rehabilitated. He stated that so much work would be required for renovation or rehabilitation that it would be "easier" to tear the structures down. He said the "flood aspect issue" would be "troublesome" for a developer because the site would have to be raised and this would require the developer to meet certain environmental regulations.

The expert further opined that it was legally permissible and physically possible to build an industrial facility on the site but it would not be "financially feasible" to do so. He said "the cost to build an industrial facility is going to be less than the value of the building after" it is constructed. The expert concluded that the highest and best use of the property was vacant and as outdoor storage.

A-5018-18T1

The expert then used a sales comparison approach to arrive at his determination of the property's fair market value. The expert identified seven vacant land sales, which he deemed comparable to plaintiff's property. The expert opined that the true market value of the property as to the October 1, 2013, and October 1, 2015 valuation dates was $120,000.

At the close of plaintiff's case, the City moved for involuntary dismissal of the complaints pursuant to Rule 4:37-2(b). The City argued that the expert's analysis was unsound and that plaintiff had not overcome the presumption of validity of the City's assessment. Because the City had advised the judge it would not be presenting any testimony, the judge converted the application to a motion for judgment pursuant to Rule 4:40-1 and reserved decision.

On June 4, 2019, Judge Novin filed a letter opinion in which he concluded that plaintiff's expert had offered a net opinion, consisting of bare conclusions that lacked substantiation. The judge therefore rejected the expert's opinion that the highest and best use of the property was to demolish the existing structures and use the property for outdoor storage. The judge also rejected the expert's vacant land sales, finding that they were not comparable to or competitive in the marketplace with the property.

In addition, Judge Novin determined that plaintiff had not provided sufficient evidence that would allow him to make a credible, independent finding of the property's true market value as of the valuation dates for 2014 and 2016. The judge therefore entered judgments affirming the City's local property tax assessments at issue. This appeal followed.

II.

On appeal, plaintiff argues that its expert witness presented sufficient evidence to support his valuation opinion. Plaintiff contends the judge erred by rejecting the opinions of its expert. We disagree.

Plaintiff argues that the analysis of its expert was "in conformity with the requirements of the [c]ode of [p]rofessional [e]thics . . . as well as the requirements of the State of New Jersey." Plaintiff asserts its expert considered all relevant approaches to estimate the fair market value of the property and utilized the correct "sales comparison" approach.

An expert's conclusions must be "founded in 'facts or data'" and those facts must be "reasonably relied upon by [other] experts in the field." Harte v. Hand, 433 N.J. Super. 457, 464 (App. Div. 2013) (quoting N.J.R.E. 703). "An expert must 'give the why and wherefore' that supports his or her opinion" and that

opinion must amount to "more than a 'mere conclusion.'" Id. at 464-65 (quoting Pomerantz Paper Corp. v. New Comm. Corp., 207 N.J. 344, 372-74 (2011)).

"[I]n resolving issues of fact arising from propositions of fact and their contradictories asserted by experts, [a] tax court judge [i]s free to accept or reject in whole or in part the testimony of such experts." Southbridge Park, Inc. v. Borough of Fort Lee, 201 N.J. Super. 91, 94 (1985) (citing Middlesex Cty. v. Clearwater Village, Inc., 163 N.J. Super. 166, 173-74 (App. Div. 1978)). The scope of appellate review of such credibility determinations is "limited to determining whether the findings of facts are supported by substantial credible evidence with due regard to the Tax Court's expertise and ability to judge credibility." Southbridge Park, Inc., 201 N.J. Super. at 94 (citing Rova Farms Resort v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974); N.J.S.A. 2A:3A-13).

As we stated previously, plaintiff's expert testified that the buildings on the property could not be rehabilitated or renovated and that it would be best to tear the structures down. The expert opined that, due to the property's proximity to a designated flood zone, it was not financially feasible to construct a new industrial facility on the site, even though such a use was legally permissible.

The expert further opined that the highest and best use of the property would be to leave the property vacant and use it for outdoor storage. The expert

based his valuation on the sales comparison approach, using seven sales of vacant properties with an offered highest and best use for outdoor storage, which he deemed "comparable" to the property.

Judge Novin found, however, that "critical aspects" of the expert's analysis were flawed, "rendering his conclusions defective." The judge noted that the expert had not conducted an interior inspection of the building, and did not rely on any professional, structural, or architectural reports, studies, or analysis. The expert also did not solicit, or attempt to solicit, any advice or information from an individual or firm qualified to render an opinion on the estimated costs to renovate the existing buildings or any part thereof.

In addition, the judge noted that the expert did not have any proposals, estimates or reports of the estimated cost of renovations and conducted no analysis of those costs. Moreover, the expert did not possess or rely on any reports from a qualified individual or firm as a basis for concluding that the buildings on site could not be renovated or rehabilitated.

Judge Novin therefore found that the expert lacked "detailed, credible, and reliable information" as to whether any of the existing structures could be renovated or rehabilitated or the estimated costs of doing so. The judge wrote

8

that the expert could not demonstrate how the estimated costs of renovation or rehabilitation would "directly" affect the value of the property.

The judge further found that the expert could not offer credible or reliable testimony "that the costs for renovating or rehabilitating" the property would contribute "no less than an equal measure of value to the property . . . ." The judge observed:

> [H]ad a qualified firm or individual determined that some or all of the subject property's buildings could be renovated or rehabilitated, the expert would have been able to weigh the costs associated with renovation versus reconstruction. The expert could have also determined whether the costs of renovation would have contributed at least an equal measure of value to the subject property. Conversely, had his analysis demonstrated that the cost to renovate or rehabilitate all or some of the buildings would have contributed a less than equal measure of value to the subject property, then demolition and redevelopment may have be[en] a justifiable alternative . . . .

The judge also noted that the expert concluded that a new industrial building would have to be raised between ten and twenty feet above the existing grade of the site. The judge noted, however, that the expert did not review the flood elevation certificate for the property and based his opinion solely on his inaccurate review of the published flood map. The judge therefore questioned

whether the expert's estimated costs for construction of a new industrial building were accurate.

In addition, the judge noted that on cross-examination, plaintiff's expert offered testimony indicating he had considered other legally permissible uses for the property. The judge observed, however, that the expert had not included any analysis of these uses or their market demands in his report. The expert admitted that he did not reach any conclusion as to the value of the property based on these other legally permissible uses.

The judge questioned how the expert was able to render his opinion as to the highest and best use of the property without properly analyzing the cost to renovate or rehabilitate the existing structures on the site, the demand in the marketplace for other legally-permitted uses, and the market value of the improvements after renovation for other permissible uses.

The judge therefore found that plaintiff's expert had offered "nothing more than bare and unsubstantiated conclusions . . . ." The judge found that because the expert had not considered the other financially feasible uses of the property, his analysis of the property's highest and best use was "fatally flawed."

We are convinced that the judge did not mistakenly exercise his discretion as a fact-finder in rejecting the expert's opinions. The judge thoroughly and

cogently explained his reason for rejecting the expert's testimony. There is sufficient credible evidence in the record to support the judge's determination that the expert's analysis was "fatally flawed."

III.

Plaintiff also argues that the Tax Court judge erred by failing to recognize the methodology used by plaintiff's expert in arriving at the fair market value of the subject property. Plaintiff contends there was sufficient credible evidence in the record to support the expert's analysis. Again, we disagree.

"A municipality is entitled to a presumption that an original tax assessment is valid, and the appealing taxpayer has the burden of proving that the assessment is erroneous." Orient Way Corp. v. Twp. of Lyndhurst, 28 N.J. Tax 272, 277 (App. Div. 2014). To overcome this presumption, the "evidence must be 'definite, positive and certain in quality and quantity . . . .'" Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985) (quoting Aetna Life Ins. v. Newark, 10 N.J. 99, 105 (1952)).

The "highest and best use" approach "is the first and most important step in the valuation process." Ford Motor Co. v. Edison Twp., 10 N.J. Tax 153, 161 (Tax Ct. 1988) (citing American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 41-42, 68 (9th ed. 1987)). "The highest and best use

for the subject property is that use which at the time of the appraisal . . . is the most profitable likely use or produces the highest property value." Ibid. (citing Inmar Assocs., Inc. v. Edison Twp., 2 N.J. Tax. 59, 64-65 (Tax Ct. 1980)).

"The highest and best use analysis requires sequential consideration of the following four criteria, determining whether the use of the subject property is: 1) legally permissible; 2) physically possible; 3) financially feasible; and 4) maximally productive." Clemente v. Twp. of S. Hackensack, 27 N.J. Tax 255, 268 (Tax Ct. 2013). As part of the analysis, "all the capabilities of the property and all the uses to which it may be applied, or for which it is adapted, are to be considered and examined and that use which yields the highest value should be selected." Ford Motor Co., 10 N.J. Tax at 165 (citing Inmar Assocs., 2 N.J. Tax at 64).

Additionally, the subject property's highest and best use "is not a static principle." VBV Realty, LLC v. Scotch Plains Twp., 29 N.J. Tax 548, 557 (Tax Ct. 2017). "The proper determination of highest and best use requires a comprehensive market analysis to ascertain the supply and demand characteristics of alternative uses." Clemente, 27 N.J. Tax at 269.

An "appraiser must interpret 'the market forces that affect the subject property and identify[] the use or uses on which the final opinion of value is

based.'" VBV Realty, LLC, 29 N.J. Tax at 557 (quoting American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 42 (14th ed. 2013)). Thus, the highest and best use of a property is a "function of the market." Entemann's Inc. v. Totowa Borough, 18 N.J. Tax 540, 545 (Tax Ct. 2000).

It is "well settled that there is no single authoritative approach to the valuation of real property. Much depends on the character of the property and the market data available." Ford Motor Co., 10 N.J. Tax at 169. The proper inquiry is "the true value of the property; that price which a hypothetical buyer would pay a hypothetical willing seller." Petrizzo v. Borough of Edgewater, 2 N.J. Tax 197, 200 (Tax Ct. 1981).

Here, the judge found that the expert's valuation analysis suffered from several defects. As we have explained, the expert failed to provide sufficient factual support for his conclusions that the existing structures could not be renovated or rehabilitated, and that some of the property would have to be raised to address flooding issues.

The expert erred in his review of the published flood map. The expert also failed to consider the other legally permissible uses of the property and the market value of such uses after renovation or rehabilitation. There was insufficient factual support for the assumption that the highest and best use of

13

the property was as outdoor storage, an assumption which affected the selection of comparable sales for valuation purposes.

On appeal, plaintiff contends that its expert's analysis included summary descriptions of the property and the market for properties of a similar type. Plaintiff asserts that its expert's analysis included applicable tax data, income and expense data, zone status, demographics, comparable sales data, and zoning requirements.

Plaintiff further contends its expert provided sufficient support for the conclusion that the City had assessed the property based on an unrealistically high market value. Plaintiff contends its expert established that the fair or true market value of the property was $120,000 for both 2014 and 2016.

We are convinced, however, that Judge Novin did not err by finding that plaintiff's expert's analysis of the fair market value of the property was fundamentally flawed. The record supports the judge's determination that plaintiff failed to rebut the presumption of validity for the City's property tax assessments. The judge's factual findings "are supported by substantial credible evidence" and based on his ability to judge the expert's credibility. See Phillips, 15 N.J. Tax at 226.

Affirmed in A-5018-18 and A-5024-18.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION