**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3476-23

CITY OF NEWARK, DIVISION
OF SEWER AND WATER,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

TOWNSHIP OF WEST MILFORD,

     Defendant-Respondent/
     Cross-Appellant.

_____

Argued May 4, 2026 – Decided June 8, 2026

Before Judges Sabatino and Bergman.

On appeal from the Tax Court of New Jersey, Docket Nos. 6894-2015, 5070-2016, 7402-2018, 8282-2019, 8756-2020, 11966-2020, 03283-2021 and 3338-2021.

Robert D. Blau argued the cause for appellant/cross-respondent (Blau & Blau, attorneys; Robert D. Blau, on the briefs).

Fred C. Semrau argued the cause for respondent/cross-appellant (Dorsey & Semrau, LLC, attorneys; Fred C.

Semrau, of counsel; Robert J. Rossmeissl, on the briefs).

PER CURIAM

This appeal arises from a series of tax appeals involving the assessment of approximately 16,485 acres of watershed property (the "property") owned by plaintiff City of Newark located in defendant Township of West Milford. The property was acquired by plaintiff in the early 1900s for the protection of its water supply and is subject to various legal restrictions, including the Watershed Protection and Moratorium Act, the Highlands Water Protection and Planning Act, and, most notably, perpetual conservation easements granted to the New Jersey Department of Environmental Protection ("NJDEP").

Plaintiff challenged the local property tax assessments for tax years 2014 to 2016 and 2018 to 2021, asserting that the restrictions so severely limit the utility and marketability of the property as to render it of nominal or no taxable value. Defendant cross-appealed requesting to increase the assessments, contending that the property has a higher market value for conservation and passive recreation purposes. Following a multi-day trial, the tax court affirmed the assessments, concluding the highest and best use of the property is to hold or maintain it as open space with public access for passive recreational uses, and that market evidence, adjusted to account for the conservation easements,

2

supports the assessments under review. Plaintiff appeals, contending the tax court erred both in its highest and best use determination and in its valuation analysis. Defendant seeks affirmance of the Tax Court's judgments from plaintiff's affirmative appeals and cross-appeals the court's judgment denying its counterclaim for an increase in the assessments.

After our review of the extensive record, arguments of the parties and application of the relevant legal principles, we affirm the trial court's judgments based on the cogent reasons expressed by Judge Joshua D. Novin in his thorough 64-page written opinion.

## I.

Plaintiff owns 117 parcels of watershed property containing approximately 16,485 acres or 24.71 square miles of unimproved land acquired in the early 1900's to protect its water supply. The subject property is a portion of 35,000 acres that plaintiff owns across Morris, Passaic, and Sussex counties for the purpose of protection and preservation of their water supply.[1] It is heavily forested land, the topography ranges from relatively flat to steep mountainous slopes, and it includes Echo Lake, Clinton Reservoir, and portions of Canistear Reservoir.

---

[1] The subject property is a part of the Newark-Pequannock Watershed.

 A-3476-23

The parcels are all zoned R-4 "Very Low Density Residential." Some permitted uses in R-4 zoning include farms, single-family detached dwelling units, residential communities that provide central sewer and water facilities, community residences for the developmentally disabled and community shelters for victims of domestic violence, equestrian centers, shooting ranges, bed-and-breakfasts, and wireless telecommunication facilities.

The subject property is restricted by the Watershed Protection and Moratorium Act, L. 1988, c. 163, as amended by L. 1990, c. 19 (the "Watershed Protection Act")[2] and the New Jersey Highlands Water Protection and Planning Act, N.J.S.A. 13:20-1 to -35 (the "Highlands Preservation Act").[3]

Currently, the primary use of the subject property is for passive recreation that is supported by sale of permits for activities including fishing, boating,

---

[2] The Watershed Protection Act suspended all transfer of watershed properties to allow NJDEP time to establish rules and regulations for the protection of watershed property through the state. The Act is still in effect and prohibits municipalities, municipal utility authorities, and public utilities from conveying any land used to protect public water supply. See In Re Hackensack Water Co., 249 N.J. Super. 164, 172 (App. Div. 1991); N.J.S.A 48:3-7 and N.J.S.A. 48:2-23.1

[3] All major development as defined in the Highlands Protection Act requires approval of the NJDEP. N.J.S.A. 13:20-30(a).

hiking, hunting, trapping, and horseback riding. Certain fees are charged for these activities as follows:

| Activity | Annual Fee |
|----------|------------|
| Fishing | $30 ($19 for seniors) |
| Hiking | $18 |
| Boating | $35 |
| Trapping | $50 |
| Horseback Riding | $39.50 |
| Hunting | $50 ($27.50 for seniors) |
| Stream Fishing | $7/per day |

The average revenue from the sale of the permits for these activities was $93,052 from the years of 2014-2021, as depicted in this chart:

| Year | Amount |
|------|--------|
| 2014 | $101,561 |
| 2015 | $96,065 |
| 2016 | $99,654 |
| 2017 | $86,065 |
| 2018 | $90,055 |
| 2019 | $93,308 |
| 2020 | $114,974 |
| 2021 | $67,726 |
| **Average Per Year:** | **$93,052** |

A-3476-23

The subject property was assessed under the disputed years as follows:

| Valuation Date | Total Tax Assessment | Average Ratio of Assessed True Value | Total Implied Equalized Value | Implied Equalized Value, Per Acre |
|---|---|---|---|---|
| 10/1/2013 | $35,820,050 | 92.92% | $38,549,344 | $2,338 |
| 10/1/2014 | $35,820,050 | 95.27% | $37,598,457 | $2,281 |
| 10/1/2015 | $35,820,050 | 90.34% | $39,650,266 | $2,405 |
| 10/1/2017 | $39,138,250 | 91.95% | $42,564,709 | $2,582 |
| 10/1/2018 | $39,138,250 | 90.68% | $43,160,840 | $2,618 |
| 10/1/2019 | $43,263,400 | 87.38% | $49,511,788 | $3,003 |
| 10/1/2020 | $43,263,400 | 86.74% | $49,877,104 | $3,026 |

Conservation Easements

Between January 2002 and May 2006, for the total consideration of $27,561,662, plaintiff granted the NJDEP conservation easements on the subject property. Notable provisions of the conservation easements include:

> Purpose. It is the purpose of this Easement to assure that the [subject property] will be retained forever and predominantly in its natural forested condition and to prevent any use of the [subject property] that will impair or interfere with the Conservation Values of the [subject property].
>
> . . . .

6

Prohibited Acts. Except for those rights expressly reserved, any activity on or use of the [subject property] inconsistent with the purpose of this Easement is prohibited. Without limiting the generality of the foregoing, the following activities and uses are expressly prohibited:

Subdivision and Development. Any new development or subdivision of the [subject property] is expressly prohibited, except for specific rights retained in this Easement.

Structures. Construction of billboards and cellular phone towers, golf courses, airstrips, and helicopter pads are expressly prohibited on the [subject property]. Construction of any new structures, including but not limited to both residential and agricultural structures, is expressly prohibited, . . . .

Mining. No topsoil, sand, gravel, loam, rock, or other minerals shall be deposited on, excavated, dredged, or removed from the [subject property].

Roads. No new roads may be constructed or other portions of the Property covered with concrete, asphalt, or any other paving material. Existing roads and paved surfaces may be maintained in their current condition.

. . . .

Natural resource protection. No activity shall be permitted on the [subject property] that would be detrimental to drainage, flood control, water conservation, erosion control, or soil conservation.

Timber harvesting. Clear cutting of timber stands is expressly prohibited. However, select trees may be cut to: [1] control insects and disease; [2] to prevent

A-3476-23

personal injury and property damage; [3] for firewood to be used for on-site domestic purposes; [4] and for the preservation of plant and animal species and natural communities described in this Easement. Such selective cutting shall be done under the supervision of a New Jersey State Forester, and with prior approval by the Grantee. Any commercial timber harvesting on the [subject property] shall be conducted on a sustainable yield basis and in accordance with an approved Forest Stewardship Plan.

Additionally, the easements provide the NJDEP the right of first refusal to purchase the property for perpetual duration. Further, the easements require plaintiff, or its agent, to continue to allow public access and allow public hunting and fishing access at a reasonable fee and impose reasonable rules of access, by means of a public permit system.

Plaintiff's Expert Testimony

Newark's Valuation Expert, Jon P. Brody, MAI, CRE, testified at trial. Brody considered five potential uses for the property: integrated water utility, R-4 low-density development, firewood sales, commercial timber harvesting, and passive recreation. He excluded water utility use due to legal prohibitions and development due to conservation easements. Firewood sales were rejected because the easement only allows use on-site, not commercial sale. Timber harvesting was dismissed as neither legally permissible nor financially feasible. Passive recreation was found physically and legally possible, but not financially

feasible due to maintenance costs exceeding potential income. Thus, Brody rejected all potential uses as the highest and best use.

Defendant's Experts' Testimony

Defendant offered Frank Pinto as an expert in open space and land conservation, who testified there is a market for deed-restricted land like the subject property, with potential buyers including institutions and utility companies interested in control and passive recreational or research uses. He believed a sale would attract national attention due to the property's size and proximity to Manhattan.

Defendant also offered valuation expert testimony from Matthew S. Krauser, CRE, FRICS, who opined the highest and best use is passive recreation, as legal and physical constraints prevent other uses. He found passive recreation to be the only legally permissible and maximally productive use, given the conservation easement and other restrictions.

Specifically, Krauser opined:

> There does not appear to be any reasonably probable use of the site that would generate a higher residual land value than passive recreational use, due to the physical and legal constraints as well as the encumbrance of the conservation easement, Watershed Moratorium Act, and the NJ Highlands Preservation Act located on the subject property.

9

<u>Tax Court Decision</u>

The court summarized the central issues as:

> (i) due to the Conservation Easements, zoning, and other legal restrictions, does the subject property have a highest and best use; (ii) what use, if any, is the subject property's highest and best use; and (iii) what is the most appropriate method for deriving the subject property's true or market value for tax assessment purposes.

The court focused on whether the property had a highest and best use given its restrictions, what that use was, and the best valuation method. The court cited precedent that undevelopable land's highest and best use is open space or conservation. After reviewing the evidence, the court found the defendant's experts were more credible and determined the highest and best use is open space with public access for passive recreation.

To determine valuation, the court used a two-step process: first, value the land as if it was unencumbered, then adjust for the easements. Neither party provided unencumbered market value, so the court relied on comparable sales, particularly "land sale 5," a nearby tract with similar constraints. The court made adjustments for market conditions, lack of recorded easements, and public access obligations, resulting in a per-acre value as follows: (i) $2,532, per acre, for the 2014 tax year; (ii) $2,558, per acre, for the 2015 tax year; (iii) $2,634,

10

per acre, for the 2016 tax year; (iv) $2,737, per acre, for the 2018 tax year; (v) $2,788, per acre, for the 2019 tax year; (vi) $2,839, per acre, for the 2020 tax year; and (vii) $2,890, per acre, for the 2021 tax year. The court found the total property value ranged from $41.7 million to $47.6 million over the disputed years broken down as follows: (i) $41,740,000, as of October 1, 2013 ($2,532 x 16,485 acres); (ii) $42,169,000, as of October 1, 2014 ($2,558 x 16,485 acres); (iii) $43,421,000, as of October 1, 2015 ($2,634 x. 16,485 acres); (iv) $45,119,000, as of October 1, 2017 ($2,737 x 16,485 acres); (v) $45,960,000, as of October 1, 2018 ($2,788 x 16,485 acres); (vi) $46,801,000, as of October 1, 2019 ($2,839 x 16,485 acres); and (vii) $47,642,000, as of October 1, 2020 ($2,890 x 16,485 acres).

After concluding the subject property's true or fair market value, the court then determined the subject property's correct assessment for the disputed tax years applying the ratios pursuant to N.J.S.A. 54:51A-6(a)[4] finding:

| Tax Year | Assessed Value | True Market Value | Upper Limit | Lower Limit | Ratio |
|---|---|---|---|---|---|
| 2014 | $35,820,050 | $41,740,000 | 100% | 78.98% | 85.82% |

[4] Also referred to as Chapter 123.

| | | | | | |
|---|---|---|---|---|---|
| 2015 | $35,820,050 | $42,169,000 | 100% | 80.98% | 84.94% |
| 2016 | $35,820,050 | $43,421,00 | 100% | 76.79% | 82.50% |
| 2018 | $39,138,250 | $45,119,00 | 100% | 78.16% | 86.74% |
| 2019 | $39,138,250 | $45,960,000 | 100% | 77.08% | 85.16% |
| 2020 | $43,263,400 | $46,801,00 | 100% | 74.27% | 92.44% |
| 2021 | $43,263,400 | $47,642,000 | 99.75% | 73.73% | 90.81% |

After applying the foregoing analysis, the tax court found the ratio of assessed value, to the true market value, fell within West Milford's upper limit and lower limit of the Chapter 123 common level range. Thus, for each disputed year the court found no increase or reduction in the subject property's tax assessment was warranted, effectively denying plaintiff's complaint and defendant's counterclaim/cross-appeal. Specifically related to defendant's counterclaim, the court found an additional fifteen percent downward adjustment was necessary after determining defendant's expert did not account for the additional affirmative burden imposed by the conservation easement which requires the land to be open to the public. Therefore, all disputed tax year assessments were affirmed without an increase or reduction.

On appeal plaintiff asserts the court erred: (1) by finding that the highest and best use of the subject property was to hold and maintain it as open space without determining that it was financially feasible to do so; (2) by relying on a sale to a conservation organization because the sale does not reflect the market value of the subject property.

Defendant cross-appeals, contending the court erred by rejecting its expert's opinion of value to increase the assessments as the opinion properly accounted for the conservation easement when making adjustments to "land sale 5."

We conclude both parties' contentions on appeal lack sufficient merit to require an extended analysis and we affirm the court's judgments substantially for the reasons expressed by Judge Novin. R. 2:11-3(e)(1)(E). We briefly add the following to address the appropriate legal standards and the primary points of the parties' respective challenges set forth in their briefings and at oral argument.

## II.

"An appellate court accords a highly deferential standard of review to tax court decisions." N.J. Tpk. Auth. v. Twp. of Monroe, 30 N.J. Tax 313, 318 (App. Div. 2017). In addition, "[j]udgments of a trial judge sitting without a

jury 'are considered binding on appeal when supported by adequate, substantial and credible evidence.'" City of Newark v. Twp. of Jefferson, 466 N.J. Super. 173, 181 (App. Div. 2021) (quoting Glob. Terminal & Container Servs. v. Jersey City, 15 N.J. Tax 698, 702 (App. Div. 1996)). "This is especially so with respect to the findings of the Tax Court because of the special expertise afforded to such courts." Ibid. (quoting Glob. Terminal, 15 N.J. Tax at 703). That deference also applies to a Tax Court's credibility determinations. Phillips v. Hamilton Twp., 15 N.J. Tax 222, 226 (App. Div. 1995) (finding we give "due regard to the Tax Court's expertise and ability to judge credibility" (quoting Southbridge Park, Inc. v. Borough of Fort Lee, 201 N.J. Super. 91, 94 (App. Div. 1985))). "Therefore, we 'will not disturb [the Tax Court's] finding[s] unless they are plainly arbitrary or there is a lack of substantial evidence to support them.'" City of Newark, 466 N.J. Super. at 180 (alterations in original) (quoting Pine St. Mgmt. Corp. v. City of E. Orange, 15 N.J. Tax 681, 686 (App. Div. 1995)).

When reviewing a Tax Court's factual findings, we examine "whether the findings of fact are supported by substantial credible evidence with due regard to the Tax Court's expertise and ability to judge credibility." Yilmaz, Inc. v. Dir., Div. of Tax'n, 390 N.J. Super. 435, 443 (App. Div. 2007) (quoting First Republic Corp. of Am. v. Borough of E. Newark, 17 N.J. Tax 531, 536-37 (App.

14

Div. 1998)).  Consequently, a Tax Court's factual findings are not disturbed "unless they are plainly arbitrary or there is a lack of substantial evidence to support them."  Glenpointe Assocs. v. Twp. of Teaneck, 241 N.J. Super. 37, 46 (App. Div. 1990).  "Although an appellate court defers to a tax court's valuation decisions, it will review de novo a tax court's legal decisions."  N.J. Tpk. Auth., 30 N.J. Tax at 318 (citing Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

"Original assessments . . . are entitled to a presumption of validity."  City of Newark, 466 N.J. Super. at 181 (quoting MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (1998)).  The party challenging the assessment must prove "the assessment is erroneous."  Ibid. (quoting MSGW, 18 N.J. Tax at 373).  The evidence a challenger uses to establish the invalidity of an assessment "must be 'definite, positive and certain in quality and quantity.'"  MSGW, 18 N.J. Tax at 373 (quoting Pantasote Co. v. City of Passaic, 100 N.J. 408, 413 (1985)).  It "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'"  City of Newark, 466 N.J. Super. at 181 (quoting W. Colonial Enters., LLC v. City of E. Orange, 20 N.J. Tax 576, 579 (Tax 2003)).  Newark recognizes and has long invoked this

presumption of validity in cases where it is the taxing municipality. See, e.g.

Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105 (1952).

A Tax Court judge is "free to accept or reject in whole or in part the testimony of" an expert witness. Southbridge Park, 201 N.J. Super. at 94. If the challenger meets the evidential standard and proves the assessment is invalid, "the trial court must 'appraise the testimony, make a determination of true value and fix the assessment.'" City of Newark, 466 N.J. Super. at 181 (quoting Rodwood Gardens, Inc. v. City of Summit, 188 N.J. Super. 34, 38-39 (App. Div. 1982)).

Plaintiff asserts that the court erred by determining the highest and best use of the subject property was for open space and passive recreation because the court failed to properly address the financial feasibility element under the highest and best use standard. Plaintiff contends that fundamental appraisal theory and precedent mandate that a use cannot be deemed the highest and best use unless it is financially feasible, meaning the use must generate sufficient income to cover all associated expenses, including property taxes. It asserts that the evidence presented at trial demonstrated the subject property, encumbered by perpetual conservation easements, cannot generate enough revenue from passive recreation permits to cover its substantial tax and operating costs, and

that no market exists for land already preserved and made available to the public for recreation.

Plaintiff further maintains that the court disregarded this evidence and failed to make a finding on financial feasibility, instead relying on the notion that open space satisfies societal needs and desires. It argues, absent financial feasibility and market demand, the property has, at most, a nominal value, and requests that the assessment reflect this reality. We are not persuaded.

The highest and best use approach "is the first and most important step in the valuation process." Ford Motor Co. v. Edison Twp., 10 N.J. Tax 153, 161 (Tax Ct. 1988) (citing American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 41-42, 68 (9th ed. 1987)). "The highest and best use for the subject property is that use which at the time of the appraisal . . . is the most profitable likely use or produces the highest property value." Ibid. (citing Inmar Assocs., Inc. v. Edison Twp., 2 N.J. Tax. 59, 64-65 (Tax Ct. 1980)).

"The highest and best use analysis requires sequential consideration of the following four criteria, determining whether the use of the subject property is: 1) legally permissible; 2) physically possible; 3) financially feasible; and 4) maximally productive." Clemente v. Twp. of S. Hackensack, 27 N.J. Tax 255, 268 (Tax Ct. 2013). As part of the analysis, "all the capabilities of the property

and all the uses to which it may be applied, or for which it is adapted, are to be considered and examined and that use which yields the highest value should be selected." Ford Motor Co., 10 N.J. Tax at 165 (citing Inmar Assocs., 2 N.J. Tax at 64).

In addition, the subject property's highest and best use "is not a static principle." VBV Realty, LLC v. Scotch Plains Twp., 29 N.J. Tax 548, 557 (Tax Ct. 2017). "The proper determination of highest and best use requires a comprehensive market analysis to ascertain the supply and demand characteristics of alternative uses." Clemente, 27 N.J. Tax at 269. An "appraiser must interpret 'the market forces that affect the subject property and identify[] the use or uses on which the final opinion of value is based.'" VBV Realty, LLC, 29 N.J. Tax at 557 (alteration in original) (quoting American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 42 (14th ed. 2013)). Thus, the highest and best use of a property is a "function of the market." Entenmann's Inc. v. Totowa Borough, 18 N.J. Tax 540, 545 (Tax Ct. 2000).

It is "well settled that there is no single authoritative approach to the valuation of real property. Much depends on the character of the property and the market data available." Ford Motor Co., 10 N.J. Tax at 169. The proper inquiry is "the true value of the property; that price which a hypothetical buyer

would pay a hypothetical willing seller." Petrizzo v. Borough of Edgewater, 2 N.J. Tax 197, 200 (Tax Ct. 1981). "If [a] plaintiff seeks to demonstrate that a property's highest and best use is other than its current use," the plaintiff has the burden to establish that proposition by a preponderance of the evidence. Ford Motor Co., 10 N.J. Tax at 167.

We conclude the Tax Court did not ignore or misapply the financial feasibility element of the highest and best use standard as asserted by plaintiff but instead determined highest and best use taking into consideration the practical reality of the property, its restrictions, and the market for open space/conservation. Accordingly, the court emphasized that the highest and best use evaluation not only considers the traditional elements, "but the more specific role or impact that the constrained property rights have on defining the legal uses of the land." In support of its decision, the court relied on two Tax Court opinions, E. Orange City v. Livingston Twp., 15 N.J. Tax 36 (1995) and Jersey City, Div. of Water v. Parsippany-Troy Hills Twp., 16 N.J. Tax 504 (1997) that held undevelopable land can have a highest and best use for conservation as open space.

In E. Orange the court found the highest and best use of the undevelopable land, "in its entirety, is for open space or conservation." 15 N.J. Tax at 44. In

Jersey City, Div. of Water, the court concluded that underwater land had "a highest and best use . . . for conservation and open space." 16 N.J. Tax at 525. It noted that while motivations of a purchaser acquiring unencumbered land may play a role in defining a property's value in the marketplace, it is not necessarily reflective of its highest and best use. Ibid.

We concur with the court's analysis as supported by the cited case law to support its determination that the highest and best use of the properties under appeal was for conservation and open space, and that the court properly addressed the financial feasibility element in the context of the distinct use of the properties herein. Plaintiff's contention that the court erred by not properly analyzing this element holds no merit.

Plaintiff's reliance on Englewood Cliffs v. Estate of Allison, 69 N.J. Super. 514 (App. Div. 1961), to support its argument that the tax court should apply a nominal value for tax valuation purposes does not persuade us otherwise for the reasons expressed by the court, which squarely addressed this argument when finding:

> Although it was undisputed during trial that there are areas of the subject property that are flat, bordered by roadways, and have access to public utility service, and thus, are developable, no evidence or analysis was produced demonstrating what the "fair value" was of the subject property without the Conservation

Easements constraints. [Ridgewood v.] Bolger Foundation, [104 N.J. 337,] 341 [(1986)] (citing Estate of Allison, 69 N.J. Super. 514). In sum, no credible evidence was offered during trial deriving the fair market value for the subject property as developable and unencumbered by the conservation easements as instructed by the courts in Bolger Foundation and Estate of Allison. Therefore, the court finds that the valuation methods embraced by Newark's valuation expert and West Milford's valuation expert were materially flawed and of little usefulness in assisting the court to determine the subject property's true or market value.

We determine this finding is legally sound and its application by the court to the particularized facts present in this matter was not an abuse of discretion.

In addition, we determine the court's finding that defendant's experts' opinions were more credible than plaintiff's expert opinion when determining the highest and best use of the subject property as open space/conservation was not error. We provide the trial court with a "highly deferential standard of review" when assessing the basis and credibility of expert witness testimony, which we conclude supports the court's determinations herein.

Turning to defendant's cross appeal, the court found after considering defendant's expert testimony that an additional fifteen percent downward adjustment to land sale #5 was "reasonable and necessary to accurately account for the conveyance by Newark to NJDEP of the ingress/egress rights afforded

the public to the subject property under the [c]onservation [e]asements." We determine the court's additional downward adjustment, which defendant claims was reversible error, was based on substantial, credible evidence in the record and the adjustment was well within the court's discretionary powers. We are unconvinced by defendant's argument that it's expert appropriately accounted for the downward effect on the properties' valuation based on the ingress/egress rights in his opinion and testimony. We determine the lack of weight given to defendant's expert testimony by the trial court did not rise to an abuse of discretion requiring us to invalidate this minimal downward adjustment.

To the extent we have not addressed any of the parties' remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division