**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1738-20
 A-1741-20
 A-1756-20

WASHINGTON SHOPPING
CENTER, INC.,

    Plaintiff-Appellant,

v.

TOWNSHIP OF WASHINGTON,

    Defendant-Respondent.

_____

Submitted September 12, 2022 – Decided October 5, 2022

Before Judges Currier, Mayer, and Enright.

On appeal from the Tax Court of New Jersey, Docket Nos. 005517-2016, 002869-2017, and 006408-2018, whose opinion is reported at 32 N.J. Tax 259 (Tax 2021).

Berger & Bornstein, LLC, attorney for appellant (Lawrence S. Berger, on the briefs).

DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, PC, attorneys for respondent (Martin Allen, of

counsel and on the brief; Kevin A. McDonald and Wesley E. Buirkle, on the brief).

PER CURIAM

In these consolidated appeals, plaintiff Washington Shopping Center, Inc. challenges three Tax Court judgments entered by Judge Joshua D. Novin on February 11, 2021. The judgments affirmed tax assessments imposed by defendant Washington Township for plaintiff's commercial property for tax years 2016, 2017, and 2018. Plaintiff also appeals from Judge Novin's April 9, 2019 order denying its requests for the Tax Court to reopen the trial record and compel defendant's expert appraiser to testify as a rebuttal witness. We affirm.

I.

Because the issues and evidence presented at trial are fully set forth in the comprehensive and well-reasoned opinions accompanying Judge Novin's judgments and order, and his February 11 opinion is reported at 32 N.J. Tax 259 (Tax Court 2021), we highlight only the pertinent facts.

Plaintiff owns real property in Warren County at 459-471 Route 31 South in Washington Township (the property). The property is identified on

Washington Township's municipal tax map as Block 75, Lot 1 and is located within the Highlands Act Planning Area.[1]

The property consists of a 22.84-acre-rectangular-shaped parcel and was improved with an 82,233 square foot retail center. It also includes a McDonald's fast-food restaurant located on a 0.9703-acre pad site, and two other undeveloped pad sites.

For tax years 2016, 2017 and 2018, defendant valued the parcel at $6,835,864, $6,608,539, and $6,546,721 respectively. Plaintiff timely filed complaints against defendant, challenging these assessments. In April 2018, defendant filed a counterclaim seeking an increase in the 2018 tax year assessment. That same month, Judge Novin issued a case management order, fixing deadlines for the parties to exchange expert reports and other discovery.

Plaintiff submitted an appraisal report from Gregg Manzione, M.A.I., and defendant provided an appraisal report from Darren Raymond, M.A.I., SCGREA. In his transmittal letter, defendant's attorney informed plaintiff the opinions expressed in Raymond's report were "not intended to be, and should

---

[1] New Jersey enacted the Highlands Water Protection and Planning Act, N.J.S.A. 13:20-1 to -35 (the "Highlands Act"), to provide a basis for regional land use planning in areas of northern New Jersey identified as the Highlands Region. See N.J.S.A. 13:20-7(a).

not be considered, adoptive admissions." Defendant's attorney further stated defendant "reserve[d] the right not to introduce the report at the time of trial" and the report "should not be considered as part of [the] evidence until, if and when the Township offers it into evidence."

II.

Judge Novin presided over the parties' one-day trial in January 2019. Plaintiff called one witness, Manzione, whose report was admitted into evidence. Manzione testified the "fee simple market value" of the property was $3,525,000 for the tax years at issue. In arriving at this conclusion, he used an income capitalization approach.[2]

Manzione highlighted the property suffered from "issues of vacancies" and "poor economic performance." He explained that when it was built in 1996, the retail center on the property was designed to accommodate an A&P grocery store, a Walgreens, and other stores, but A&P ceased its tenancy in 2015 − when it went bankrupt − and Walgreens never took possession. Following A&P's

---

[2] As Judge Novin explained, "[t]he income capitalization approach 'consists of methods, techniques, and mathematical procedures that an appraiser uses to analyze a property's capacity to generate benefits (i.e., usually the monetary benefits of income and reversion) and convert these benefits into an indication of present value.'" Washington Shopping Ctr., Inc. v. Washington Twp., 32 N.J. Tax 259, 288 (Tax 2021) (citing Appraisal Institute, The Appraisal of Real Estate, 439 (14th ed. 2013)).

departure, the center's vacancy rate increased significantly. Manzione ascribed vacancy rates to the property at 81% as of October 1, 2015, 80% as of October 1, 2016, and 89% as of October 1, 2017.[3]

Manzione opined that "because of changing retail habits and . . . demographics, the populations and the income trends, this center has been severely impacted by the loss of the A&P." He also testified the market conditions were such that plaintiff could not find another anchor store, and the former A&P space was too large for other types of retailers. Further, Manzione stated the A&P store was too deep, reasoning most retail stores "typically need 70 to 100 feet of depth," whereas the former "A&P space is 184 feet deep."

According to Manzione, the vacant A&P space could be subdivided, but any subdivision would have to be restricted to the first 100 feet in the front to avoid excessive depth. Moreover, given the "physical obsolescence" of the property, the expert opined the cost of subdivision was not justified, due to the low potential rent and the improbability of attracting tenants. Thus, Manzione concluded the former A&P space had no economic value and should be

---

[3] Judge Novin disagreed with Manzione's vacancy rate calculation for October 1, 2015, instead ascribing a vacancy rate to the property as of October 1, 2015 at 25%, and pointing out "A&P remained in possession and continued operations in the . . . property until December 2015." Id. at 271 n.6.

5

demolished to reduce maintenance costs. Manzione similarly determined "the back of [the] Walgreens space [was] just too deep for the local market to handle." Therefore, he calculated the area without economic value amounted to 49,769 square feet, leaving 32,464 square feet of rentable retail space.

To compute the "economic" or "market" rent[4] for the 32,464 square feet of retail space, Manzione identified fifteen retail leases for properties he deemed comparable to plaintiff's property.[5] Manzione testified that based on his review of these leases, the market rent for the 32,464 square feet at issue was $12 per square foot, leading him to conclude the property had "potential gross income of $389,568 for each year." He further opined the market rent of each pad site

---

[4]  As Judge Novin observed, "economic or market rent refers to 'the most probable rent that a property should bring in a competitive and open market reflecting all conditions and restrictions of the lease agreement, including permitted uses, use restrictions, expense obligations, term, concessions, renewal and purchase options and tenant improvements.'" Id. at 288-89 (quoting Appraisal Institute, The Dictionary of Real Estate Appraisal, 121-22 (5th ed. 2010)).

[5]  Before Manzione provided details about the comparable leases, plaintiff's attorney paused his examination to see if defendant's attorney would stipulate to "the fair rental value of the . . . property." At Judge Novin's suggestion, counsel briefly conferenced this issue off the record. Subsequently, plaintiff's attorney advised the court defendant's attorney was "not prepared to stipulate . . . to . . . the fair rental value of the . . . property." Defendant's attorney agreed, noting, "the burden of proof is on the plaintiff, and we may not put a case on at the end of this. So, until [our expert's] report and testimony [has] been provided, we're not prepared to [proffer] our values and stipulations."

was $31,177, and the three pad sites would generate "additional income of $93,531" per year.

Manzione acknowledged the property included what he initially described as "excess land for future retail development." He attributed no economic value to this land, stating, "I can't see why any . . . feasible use of this land would occur because we're having such problems with the retail center in itself." After accounting for operating expenses and concluding the property's net operating income was $326,551, he "capitaliz[ed this figure] at 8.5 percent" to arrive at a "value indication" of $3,841,771. Finally, he deducted the cost of demolition for the A&P space and opined the property's appraised value was $3,525,000 for each tax year at issue.

On cross-examination, Manzione made various concessions. For example, he admitted he had no comparable leases for the two unused pad sites. He simply assumed their rental value was the same as the pad site used by McDonald's, based on a nearby sale offering, rather than an actual sale. Next, Manzione acknowledged his report referred to part of the property as "excess land for future retail development," but under cross-examination, he conceded

this section of the property should have been deemed "surplus land."[6]  Still, Manzione claimed the surplus land on the property did not have "any value." Judge Novin later observed, Manzione's "report failed to contain any analysis of the highest and best use of this land, nor did the report offer any credible evidence of the market value of the land." Washington Shopping Ctr., Inc., 32 N.J. Tax at 286.

When defendant's attorney asked Manzione whether the back of the former A&P and Walgreens spaces could be utilized as self-storage areas, the

---

[6] Judge Novin highlighted the differences between "surplus" and "excess" land as follows:

> Surplus land is the portion of the land that is unnecessary "to support the existing improvement and cannot be separated from the property and sold off." Appraisal Institute, The Appraisal of Real Estate, 214 (13th ed. 2008) . . . .  Conversely, excess land is "land beyond the normal needs of a particular use and that which is not necessary to support the existing improvements." Schimpf v. Little Egg Harbor Twp., 14 N.J. Tax 338, 343 (Tax 1994).  Thus, excess land possesses a separate and distinct value, has the ability to be sold, and must be "valued at its highest and best use and added to the value of the lot currently used, in order to ascertain the value of the lot as a whole." Ibid. (citing Appraisal Institute, The Appraisal of Real Estate, 212 (10th ed. 1992)).
>
> [Washington Shopping Ctr., Inc., 32 N.J. Tax at 286.]

expert admitted he had not considered that possibility, stating "the lack of nearby apartments . . . might have an impact on that. But . . . you'd have to look more at the market to determine that." He could not recall where the nearest self-storage facility would be in relation to the property.

Additionally, in response to questions about the fifteen leases he identified to determine a fair rent per square foot for the property, Manzione acknowledged he obtained copies of some comparable leases from a friend, without personally verifying the terms of the leases with the parties to the lease renewals. He also testified he considered lease renewals without speaking to the parties to investigate their motives for renewing. Further, he excluded as a comparable a shopping center one mile from the property, which was anchored by a Shoprite and had no vacancy, yet included certain comparable leases from a shopping center in Wantage, roughly thirty miles from the property. Additionally, Manzione conceded his "[c]omparable lease number 1 [was] a 2004 lease" and given its age, he was "not going to say . . . this is the best lease to use in determining the market value."

When Manzione's testimony concluded, plaintiff rested; defendant immediately moved for dismissal of plaintiff's complaints, pursuant to Rule 4:37-2(b), arguing plaintiff failed to overcome the presumption of validity that

attaches to tax assessments. Judge Novin denied the motion, finding Manzione raised a debatable question as to the accuracy of defendant's assessments. Following the denial of the dismissal motion, defendant withdrew its counterclaim under Rule 8:3-9 and rested, without offering any proofs or calling Raymond to testify.

After the judge fixed a schedule for the parties to submit their post-trial briefs, plaintiff's counsel asked the judge to reopen the record and compel defendant's expert to testify as a "rebuttal" witness. Defendant's counsel objected, arguing, "there's nothing to rebut." Over defendant's objection, the judge permitted the parties to brief the rebuttal issue.

## III.

On April 9, 2019, Judge Novin denied plaintiff's requests to reopen the trial record and direct defendant's expert to testify. In his comprehensive, eighteen-page opinion, the judge noted Raymond did "not consent to willingly offer expert testimony on [plaintiff's] behalf," and "[o]ur Supreme Court has consistently observed that New Jersey is in the minority of jurisdictions in not allowing the compulsion of expert testimony." Washington Shopping Ctr., Inc. v. Washington Twp., Nos. A-5517-16, A-2869-17, and A-6408-18 (Tax April 9, 2019) (slip. op. at 23-24).

Following the entry of the April 9 order, plaintiff requested in its post-trial brief that Judge Novin draw an adverse inference against defendant for failing to produce Raymond at trial. Plaintiff also submitted excerpts from Raymond's report and asked the judge to consider them. Defendant objected to both of plaintiff's requests.

IV.

On February 11, 2021, Judge Novin entered judgments for tax years 2016, 2017 and 2018, affirming the assessments for each respective tax year. In his well-reasoned, thirty-six-page opinion, Judge Novin found plaintiff was not entitled to have the court draw an adverse inference against defendant based on its decision not to call Raymond at trial. The judge explained plaintiff "offered no evidence that Washington Township's proposed testifying expert witness possessed superior knowledge of facts related to the . . . property and that his testimony would have elicited more meaningful insight into that information than [plaintiff's e]xpert offered." Washington Shopping Ctr., Inc., 32 N.J. Tax at 276-77. The judge added:

> [i]n local property tax appeal matters, the appealing party shoulders "the burden of proving the assessment erroneous. The evidence necessary to overcome the presumption of validity must be 'definite, positive and certain in quality and quantity'. . . . [The taxing district]

11

'was under no legal obligation to shore up the weaknesses in plaintiff's proofs by the presentation of independent evidence of value.'"

[Id. at 277 (citing Glenpointe Assocs. v. Twp. of Teaneck, 12 N.J. Tax 118, 123 (App. Div. 1990)).]

Next, the judge noted plaintiff's counsel submitted a certification in support of his post-trial brief, and annexed "copies of [defendant's] proposed testifying expert's appraisal report." The judge found

> because [defendant's] proposed testifying expert's appraisal report, including the statements and conclusions reached therein, were not part of the trial record and were not reasonably suggested by the evidence, the court will not consider those documents and any statements or conclusions reached therein as evidence in deciding these matters.

[Id. at 279.]

Judge Novin also painstakingly detailed various deficiencies in Manzione's report and testimony, which we need not list here. Suffice it to say the judge determined Manzione's "highest and best use analysis of the . . . property, as improved, [was] flawed and not credible." Id. at 283. The judge specifically found, too, that while Manzione's

> appraisal report included a total of fifteen leases ranging in size from 1,500 to 30,000 square feet[,] . . . . several leases were not credible evidence of economic rent due [to] a number of factors, including the dates of execution of the leases, the circumstances surrounding

12

the execution of the leases, and locational differences between the . . . property and the comparable leased property.

[Id. at 283 n.12.]

Further, Judge Novin stated that under Glen Wall Associates v. Wall Township, 99 N.J. 265, 280 (1985), he was obliged "'to apply [his] own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment for the years in question'" once he denied defendant's motion to dismiss. Washington Shopping Ctr. Inc., 32 N.J. Tax at 300-01 (quoting New Cumberland Corp. v. Roselle, 3 N.J. Tax 345, 353 (N.J. Tax Ct. 1981)). But he found Manzione's "testimony and appraisal report . . . discloses material issues of credibility, rendering his conclusions of dubious value." Id. at 301.

Additionally, Judge Novin stated, "without credible evidence of economic or market rent supported by objective, market extracted data, the court is unable to discern the units of value to be applied to each of the . . . property's component parts." Ibid. In light of the deficiencies in Manzione's "testimony and appraisal report," Judge Novin concluded "the trial record contains insufficient credible information to enable the court to make a reliable independent finding of the . . . property's value as of the October 1, 2015,

October 1, 2016, and October 1, 2017 valuation dates" so he was constrained to "enter judgments affirming the . . . property's 2016, 2017, and 2018 local property tax assessments." Ibid.

V.

On appeal, plaintiff raises the following arguments:

POINT I

THE TAX COURT ERRED BY RULING IN ITS APRIL 9, 2019 DECISION THAT THE TOWNSHIP'S EXPERT APPRAISER COULD NOT BE COMPELLED TO TESTIFY AND THAT HIS EXPERT REPORT WHICH HAD BEEN EXCHANGED PURSUANT TO THE COURT'S CASE MANAGEMENT ORDER, COULD NOT BE INTRODUCED INTO EVIDENCE.

A. THE FIRST ISSUE BEFORE THIS COURT.

B. IN CASES WHERE A GOVERNMENT ENTITY HAS AN OBLIGATION TO VALUE PROPERTY AT FAIR MARKET VALUE, THE PROPERTY OWNER MAY CALL, AS A WITNESS AT TRIAL, AN EXPERT WHO HAD BEEN PREVIOUSLY HIRED BY THE GOVERNMENT AND HAS PREPARED AN APPRAISAL REPORT AND REACHED AN OPINION ON VALUE, BUT WHO WAS NOT CALLED TO TESTIFY FOR THE GOVERNMENT.

C. COMPELLING THE ADVERSARY'S APPRAISAL EXPERT TO TESTIFY IN CONSITUTIONALLY MANDATED FAIR MARKET

14

VALUATION CASES, INCLUDING REAL ESTATE TAX APPEALS.

D. IN FITZGERALD,[7] THE NEW JERSEY SUPREME COURT CLARIFIED AND EXPANDED THE RIGHT OF A PARTY TO CALL AN ADVERSARY'S EXPERT AS A WITNESS.

E. THE TAX COURT'S DECISION ON THE ISSUE OF COMPELLING THE TOWNSHIP'S EXPERT TO TESTIFY.

F. WILLINGNESS OF EXPERT TO TESTIFY.

POINT II

THE TAX COURT ERRED BY NOT DRAWING AN ADVERSE INFERENCE FROM THE TOWNSHIP'S FAILURE TO CALL ITS APPRAISAL EXPERT AS A WITNESS AT TRIAL.

POINT III

THE TAX COURT ERRED BY AFFIRMING THE MUNICIPALITY'S ASSESSMENTS BECAUSE IT FAILED TO BASE ITS DECISION ON THE EVIDENCE BEFORE IT.

A. HIGHEST AND BEST USE.

1. THE STANDARD FOR HIGHEST AND BEST USE AND THE EVIDENCE BEFORE THE COURT.

---

[7] Fitzgerald v. Stanley Roberts, Inc., 186 N.J. 286 (2006).

15

2.     THE TRIAL COURT'S DECISION WITH RESPECT TO THE HIGHEST AND BEST USE OF THE SUBJECT PROPERTY.

B.     THE TAX COURT ERRED IN ITS CONSIDERATION OF THE SO-CALLED "SURPLUS LAND."

C.     THE TAX COURT ERRED BY REJECTING NEARLY ALL OF THE LEASE COMPARABLES OFFERED BY PLAINTIFF'S EXPERT APPRAISER, DESPITE THE FACT THAT NO CONTROVERTING EVIDENCE WAS BEFORE THE COURT.

D.     THE TAX COURT ERRED BY FINDING IINSUFFICIENT EVIDENCE TO DETERMINE THE VALUE OF THE PAD SITES ON THE SUBJECT PROPERTY.

These arguments are unavailing.

Our scope of review of a Tax Court decision is limited. Indeed, we "generally extend enhanced deference to the expertise of the Tax Court. . . ." BIS LP, Inc. v. Dir., Div. of Tax'n, 26 N.J. Tax 489, 493 (App. Div. 2011). The Tax Court's factual "findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them." Glenpointe Assocs. v. Twp. of Teaneck, 241 N.J. Super. 37, 46 (App. Div. 1990). But "we review the Tax Court's legal determinations de novo." Alcatel-Lucent USA Inc.

v. Twp. of Berkeley Heights, 460 N.J. Super. 243, 249 (App. Div. 2019) (citation omitted).

We further recognize our review of a trial court's evidential rulings "is limited to examining the decision for abuse of discretion." Parker v. Poole, 440 N.J. Super. 7, 16 (App. Div. 2015) (quoting Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008)). Thus, "[t]he admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citing State v. Berry, 140 N.J. 280, 293 (1995)). We also note "an adverse inference charge should rarely be invoked to address the absence of an expert['s]" testimony at trial. Washington v. Perez, 219 N.J. 338, 343 (2014).

Applying these principles, we perceive no basis to second-guess Judge Novin's factual findings and are persuaded his legal conclusions are unassailable. Accordingly, we affirm substantially for the reasons thoughtfully expressed by Judge Novin in his April 9, 2019 and February 11, 2021 opinions.

To the extent we have not addressed plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1738-20